2023 IL App (4th) 220280

NO. 4-22-0280

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Boone County |
| ANTHONY M. PEREZ, | ) | No. 13CF270 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | C. Robert Tobin III, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Harris and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1          Defendant, Anthony M. Perez, appeals an order dismissing his postconviction petition at the second stage of proceedings. Defendant's retained counsel filed an untimely postconviction petition on defendant's behalf without pleading defendant's lack of culpable negligence. Counsel's one-day delay seems due to his miscalculating the deadline to file a petition for *certiorari* in the Supreme Court of the United States after the Illinois Supreme Court denied leave to appeal in defendant's direct appeal. As a result, the trial court dismissed defendant's postconviction petition on the State's motion without considering the merits of most of defendant's claims. On appeal, defendant's primary contention is that he received unreasonable assistance of postconviction counsel. The most significant issue for our consideration is whether we should automatically remand the matter for further second-stage proceedings due to counsel's mistake or whether we should instead consider the merits of defendant's postconviction claims. For the

following reasons, we hold that it is appropriate to consider the merits of defendant's postconviction claims, and we affirm the trial court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        Following a trial in the circuit court of Boone County, a jury found defendant guilty of three counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2012)), two counts of attempted first degree murder, aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2012)), unlawful possession of a firearm by a street gang member (720 ILCS 5/24-1.8(a)(1) (West 2012)), and mob action (720 ILCS 5/25-1(a)(1) (West 2012)). The jury further found that defendant personally discharged a firearm. The court sentenced defendant to an aggregate of 95 years in prison. The Second District of the Illinois Appellate Court affirmed the judgment on direct appeal, providing a lengthy summary of the trial evidence. *People v. Perez*, 2020 IL App (2d) 180073-U. We will recount only the facts necessary to understand defendant's postconviction claims.

¶ 4        In the early morning hours of November 30, 2013, two armed men approached a parked car occupied by Giovanni Galicia, Jesus Casas, and Fermin Estrada. One of the armed men opened fired at the car. Galicia was killed, but neither Casas nor Estrada were hit. Shortly thereafter, a police officer engaged in a high-speed chase with a Lincoln Navigator that was suspected to be driven by the perpetrators. When the Navigator eventually stopped, the occupants fled from the vehicle. The police quickly apprehended three people—Ricardo Garcia, Ricardo Figueroa, and Cheyanne Patton. The police later observed that all four doors of the Navigator were open, suggesting that a fourth suspect escaped on foot. Inside the Navigator, the police found the gun that was used in the shooting. The police found a second gun nearby in the street. The State's theory at trial was that defendant was the shooter who escaped from the Navigator on foot.

¶ 5 Authorities were unable to connect defendant to the shooting with either fingerprint or DNA evidence. The murder weapon was determined to contain a mixture of DNA from at least two individuals. Specifically, there was a major female profile along with an incomplete minor profile. Patton, the only female who submitted a swab for comparison, was excluded as contributing to that major profile. The State introduced evidence that defendant made statements to fellow inmates at the county jail expressing his belief that the female DNA may have come from defendant having previously hit an unidentified woman with the gun or having put the gun to that woman's head.

¶ 6 Neither Casas nor Estrada ever identified defendant as one of the perpetrators. Casas did not get a good look at either of the armed men. Although Estrada noticed that the shooter wore a hoodie and had his face covered, Estrada initially told the police, with either 85% or 100% certainty, that the shooter was somebody other than defendant.

¶ 7 Patton, however, identified defendant as the shooter. Patton testified that she attended a party the evening before the shooting at a residence in Belvidere she shared with Garcia and Mallek Sanchez. Patton claimed that Garcia, Figueroa, and defendant were at the party. Patton saw both Figueroa and defendant taking "pictures with a gun" at the party. Patton explained that Garcia then drove her, Figueroa, and defendant in a Navigator to a different area of Belvidere to "get at somebody." Patton testified that Figueroa and defendant exited the Navigator, then Patton heard gunshots. Figueroa and defendant returned to the Navigator. Defendant, who was holding a gun, then made a comment about having just shot somebody in the face.

¶ 8 The State also presented evidence from two witnesses, Hugo Pena and Patrick Brooks, who detailed their conversations with defendant in the Boone County jail after the shooting. Pena and Brooks both testified that defendant made incriminating statements to them

about his involvement in the shooting. Pena also stated that he saw one or more photographs on Facebook where defendant was wearing a "du-rag" and "showing" a gun. Those photographs, which Pena said had since been taken down from Facebook, were not admitted into evidence. Apparently, the State never possessed those photographs. Some of the details that Brooks claimed defendant told him did not conform to the known facts about the shooting.

¶ 9        The State presented Joseph Raschke, a special agent with the Federal Bureau of Investigation, as an expert on the topic of historical cell-site analysis. Raschke tracked the movements on the night of the shooting of a phone that the State linked to defendant. The movements of that phone were consistent with the State's theory that defendant fled the scene of the shooting in the Navigator. There was extensive pretrial litigation and trial testimony addressing the reliability of the State's cell-site-analysis evidence. The defense wanted to call Joseph Kennedy as a cellular technology expert to counter Raschke's opinions. The trial court found Kennedy unqualified and, thus, barred his testimony.

¶ 10        The jury found defendant guilty of all charges and found that he personally discharged a firearm. The court sentenced defendant on five of the eight counts to an aggregate of 95 years in prison.

¶ 11        The Second District affirmed the judgment. As it pertains to the present appeal, the court held that (1) the State proved defendant guilty beyond a reasonable doubt, (2) there was no merit to defendant's challenges to various portions of Raschke's testimony, and (3) defendant failed to present a cogent plain-error argument, so the court would not review defendant's forfeited challenge to Pena's testimony describing the photographs he saw on Facebook. *Perez*, 2020 IL App (2d) 180073-U, ¶¶ 92, 128-34, 142-44.

¶ 12　　　　On May 27, 2020, our supreme court denied defendant's petition for leave to appeal. *People v. Perez*, No. 125824 (Ill. May 27, 2020). The due date for filing a petition for *certiorari* with the Supreme Court of the United States was August 25, 2020. See Sup. Ct. R. 13(1) (a petition for *certiorari* is due within 90 days after the state court of last resort denies discretionary review). Defendant did not file a petition for *certiorari*. Thus, defendant's deadline for filing a postconviction petition was February 25, 2021. See 725 ILCS 5/122-1(c) (West 2020) ("If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence."). However, this deadline does not apply to claims of actual innocence. 725 ILCS 5/122-1(c) (West 2020).

¶ 13　　　　On February 26, 2021, one day after the deadline, defendant, represented by the same law firm that represented him on direct appeal, filed a postconviction petition. Defendant did not allege that his one-day delay in filing was not due to his culpable negligence. Defendant raised six claims, some of which had multiple subparts. We will mention only the aspects of the claims that are relevant to this appeal.

¶ 14　　　　Defendant claimed that "the trial court improperly admitted speculative testimony disguised as expert opinions[,] causing the jury to be misled as to the limitations of [historical cell-site analysis], violating defendant's right to due process and rendering defendant's trial fundamentally unfair." Although defendant acknowledged that the appellate court rejected a similar challenge to Raschke's testimony in defendant's direct appeal, defendant asserted that "it is now known that Raschke's testimony was mere speculation." In support of this allegation, defendant attached the affidavit of Manfred Schenk, a computer scientist. In his affidavit, Schenk

described why he believed Raschke reached erroneous conclusions about the locations of defendant's cell phone on the night of the shooting.

¶ 15        Defendant also claimed that his trial counsel was ineffective for failing to preserve challenges to Pena's testimony about what he saw on Facebook. According to defendant, Pena's testimony was improper for multiple reasons, including that it violated the best evidence rule.

¶ 16        Defendant further claimed that he was innocent of the crimes for which he was convicted. Defendant first noted that, after his trial, authorities determined that the female DNA on the murder weapon came from a laboratory technician.

¶ 17        As part of his actual-innocence claim, defendant also presented his own affidavit, along with the affidavits of Mallek Sanchez and Michelle Boyd. In his affidavit, defendant denied (1) being involved in the shooting, (2) attending the party on the evening of the shooting, (3) making the statements that Pena and Brooks attributed to him, or (4) posing for a picture wearing a du-rag and holding a gun. Sanchez averred that (1) defendant was not at the party on the night of the shooting, (2) he (Sanchez) was never questioned by the police on that issue, and (3) had he been so questioned, he would have said that defendant was not there on the night of the shooting.

¶ 18        In her affidavit, Boyd attested that she received text messages from Pena after defendant's trial. Boyd attached screenshots of the text messages to her affidavit. In those text messages, Pena told Boyd the following, in relevant portion:

> "Hey your friend angie perez [(defendant's mother)]…Give word to her that i got some info that can get her son back to court for a new trial. They made me testify on his case but this other guy that testified lied n i had proof n the states attorny wanted to keep it secret[.] *** When i gave the info to my lawyer about the guy that lied i told him i was going to get a hold of anthonys lawyer n let him kno what's

goin on n he looked worried..n went to talk to the state attorney.. they wanted to hurry n sentance me n get me on my way after i said that."

In his postconviction petition, defendant interpreted these text messages as meaning that Pena had proof that Brooks lied at defendant's trial.

¶ 19 The trial court advanced defendant's postconviction petition to the second stage. The court noted that the petition was "replete with allegations that are frivolous or patently without merit or would not survive waiver and *res judicata* arguments." Nevertheless, the court determined that, although the claim was not specifically raised in the petition, defendant had "unwittingly" raised the gist of a claim that the State committed a *Brady* violation by failing to inform the defense about the information referenced in Pena's text messages to Boyd. See *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

¶ 20 After the trial court advanced the matter to the second stage, postconviction counsel initially told the court he would amend the petition. When the matter returned to court, postconviction counsel said: "I conferred with my client. We're going to stand on the first original one."

¶ 21 The trial court appointed the Office of the State's Attorneys Appellate Prosecutor as the special prosecutor to represent the State in connection with the postconviction proceedings. The State moved to dismiss defendant's petition. With no additional elaboration, the State asserted that (1) the petition was untimely, (2) defendant failed to establish a substantial denial of his constitutional rights, (3) the petition's allegations were deficient for failing to attach affidavits,

records, or other evidence, and (4) the petition contained allegations that were either waived or barred by *res judicata*.

¶ 22        At the hearing on the State's motion to dismiss the petition, neither the State nor defendant's postconviction counsel identified the correct due date for defendant's postconviction petition. Defendant's postconviction counsel erroneously argued that the petition was timely because it was filed within nine months of our supreme court denying defendant's petition for leave to appeal. With respect to the potential *Brady* claim that the court had identified in advancing the petition to the second stage, defendant's postconviction counsel told the court that defendant was not making allegations against any particular assistant state's attorney. Counsel added that "[w]e" received unsolicited information from Pena. Counsel stated, "[w]e don't know it all yet," though he hoped "to present them [*sic*] in an evidentiary hearing."

¶ 23        On February 22, 2022, the trial court granted the State's motion to dismiss the postconviction petition. The court determined that the petition was untimely by one day, which precluded all defendant's claims except for his claim of actual innocence. The court determined that defendant failed to make a substantial showing of actual innocence. See *People v. Robinson*, 2020 IL 123849, ¶ 47 ("To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial.").

¶ 24        Specifically, the trial court determined that the DNA evidence, though newly discovered, was not material, as "[t]he jury knew that the DNA on the weapon was not the defendant's." The court reasoned that "[t]he only help to the defendant to knowing this information earlier would have been to avoid making incriminatory statements to Mr. Pena trying to explain the presence of female DNA on the weapon." According to the court, "[b]ecause the DNA test

does not even meet the materiality threshold, it cannot come anywhere near the requirement of undermining the court's confidence in the judgment of guilt."

¶ 25    The trial court determined that Sanchez's affidavit contained information that was material and noncumulative. However, Sanchez's affidavit was not newly discovered, as Sanchez was "well known to the petitioner at the time of trial, and the testimony of Mr. Sanchez could have been acquired and presented by the defendant at trial." The court also concluded that "Sanchez's testimony that the petitioner was not at the party does not place the trial evidence in a different light or undermine the court's confidence in the judgment of guilt."

¶ 26    Similarly, the trial court found that defendant's affidavit was not newly discovered, as defendant had declined to exercise his right to testify at trial.

¶ 27    The trial court explained that Boyd's affidavit provided "possible sources of new evidence" but was "not new evidence itself." The court noted that Boyd had no personal information about the case, nor did she specify the details of other witnesses' potential testimony referenced in Pena's text messages. Without knowing the nature of the potential testimony referenced in the text messages, the court determined that defendant had not shown that such evidence was material, noncumulative, or conclusive.

¶ 28    This court allowed defendant to file a late notice of appeal and this appeal followed.

¶ 29                                   II. ANALYSIS

¶ 30    Defendant raises two overarching issues on appeal: (1) his postconviction counsel provided unreasonable assistance and (2) he made a substantial showing of actual innocence.

¶ 31    In support of his claim of unreasonable assistance, defendant emphasizes that his postconviction counsel filed an untimely petition without pleading defendant's lack of culpable negligence. Although defendant acknowledges authority contradicting his argument, he proposes

that we should remand for further second-stage proceedings without considering whether he demonstrated prejudice as a result of the dismissal. Alternatively, defendant contends that he was prejudiced by his postconviction counsel's failure to overcome untimeliness because the petition made substantial showings that (1) Raschke's trial testimony violated defendant's right to due process and (2) defendant's trial counsel was ineffective for failing to preserve for appellate review an argument that portions of Pena's testimony violated the best evidence rule. Defendant further submits that his postconviction counsel provided unreasonable assistance by (1) failing to supplement the petition to develop a *Brady* claim and (2) failing to argue that trial counsel was ineffective for not calling Sanchez as a witness. Defendant separately contends that Boyd's affidavit and the new DNA evidence made a substantial showing of actual innocence.

¶ 32 The State responds that defendant's petition was untimely and did not make substantial showings of either a constitutional violation or actual innocence.

¶ 33 The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) "provides a tool for criminal defendants to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. House*, 2021 IL 125124, ¶ 15. There are three stages of postconviction proceedings. At the first stage, the court reviews the petition independently to "determine whether it is 'frivolous or *** patently without merit.' " *House*, 2021 IL 125124, ¶ 16 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2008)). If the court does not summarily dismiss the petition, the matter proceeds to the second stage. *House*, 2021 IL 125124, ¶ 16. At the second stage, the State may file a responsive pleading. *House*, 2021 IL 125124, ¶ 17. If the defendant does not make a substantial showing of a constitutional violation at the second stage, the court dismisses the petition. *House*, 2021 IL 125124, ¶ 17. However, if the defendant makes such showing, the matter proceeds to a

third-stage evidentiary hearing. *House*, 2021 IL 125124, ¶ 17. We review *de novo* an order dismissing a petition at the second stage. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 34                    A. Reasonable Assistance of Postconviction Counsel

¶ 35        We first address defendant's claim that he received unreasonable assistance of postconviction counsel. Defendant requests a remand for further second-stage proceedings. As a preliminary issue, we must decide whether we should consider the merits of defendant's postconviction claims when evaluating the reasonableness of counsel's assistance. In other words, to show that his postconviction counsel's assistance was unreasonable, must defendant show that his counsel's actions caused him to forgo a meritorious claim? Or, as defendant proposes, irrespective of the merits of defendant's postconviction claims, is a remand warranted because counsel's mistake regarding the filing deadline caused the trial court to dismiss most of defendant's claims as time-barred?

¶ 36                    1. *We Will Consider the Merits of Defendant's*

*Postconviction Claims When Evaluating the Reasonableness*

*of Counsel's Assistance*

¶ 37        In most cases, prisoners file an initial *pro se* postconviction petition. If that petition survives summary dismissal and advances to the second stage, the trial court then appoints counsel for the petitioner. A postconviction petitioner is entitled to "reasonable assistance" of counsel at the second stage of proceedings, which is " 'significantly lower than the [standard] mandated at trial by our state and federal constitutions.' " *People v. Smith*, 2022 IL 126940, ¶ 35 (quoting *People v. Custer*, 2019 IL 123339, ¶ 30). When the court appoints counsel for a petitioner, counsel must substantially comply with the requirements of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. Rule 651(c) imposes three duties on

counsel: (1) the duty to consult with the petitioner, (2) the duty to examine the record, and (3) the duty to "make any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions." *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). This third duty "requires amendment of an untimely petition to allege any available facts showing the delay in filing was not due to the petitioner's culpable negligence in an effort to excuse the untimely filing." *Perkins*, 229 Ill. 2d at 37.

¶ 38        Where postconviction counsel files a certificate attesting that he or she fulfilled the three obligations of Rule 651(c), there is a rebuttable presumption that the petitioner received reasonable postconviction assistance. *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 14. If counsel did not comply with Rule 651(c), the reviewing court will not consider the merits of the defendant's postconviction claims but instead must remand for further second-stage proceedings "with the benefit of reasonable assistance of counsel." *People v. Turner*, 187 Ill. 2d 406, 417 (1999); see also *People v. Suarez*, 224 Ill. 2d 37, 51 (2007) ("Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized."). Some cases refer to this as an "automatic-remand rule." *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 55.

¶ 39        Rule 651(c) does not apply where a petitioner retains counsel to file the initial postconviction petition. See *People v. Cotto*, 2016 IL 119006, ¶ 41 ("Rule 651(c) applies only to a postconviction petition initially filed by a *pro se* defendant."). Nevertheless, a petitioner who retains counsel is entitled to reasonable assistance of counsel (*Cotto*, 2016 IL 119006, ¶¶ 41-42), even at the first stage of postconviction proceedings (*People v. Johnson*, 2018 IL 122227, ¶ 23).

¶ 40        Here, Rule 651(c) does not apply, as defendant's retained counsel filed the initial postconviction petition. However, defendant seeks the benefit of an "automatic-remand rule" that developed under caselaw interpreting Rule 651(c). In *Zareski*, the First District of the Illinois Appellate Court rejected a similar argument, holding that the "automatic-remand rule" does not apply where retained counsel files the initial postconviction petition. *Zareski*, 2017 IL App (1st) 150836, ¶ 55.

¶ 41        *Zareski* came before the appellate court in an identical procedural posture to the case at bar. Specifically, the defendant retained counsel to file an initial postconviction petition, the trial court dismissed that petition at the second stage of proceedings, and the defendant argued on appeal that his counsel provided unreasonable assistance. *Zareski*, 2017 IL App (1st) 150836, ¶¶ 1, 46. The defendant in *Zareski* complained that his counsel failed to raise certain claims and that counsel raised other claims that were procedurally barred. *Zareski*, 2017 IL App (1st) 150836, ¶ 46. According to the defendant, because his postconviction counsel failed to present claims "properly" and "in their best light," the appellate court should "automatically remand to the trial court without considering whether these claims would have had any chance of success in the trial court." *Zareski*, 2017 IL App (1st) 150836, ¶ 46. The State, by contrast, contended that defendant's postconviction claims lacked merit. *Zareski*, 2017 IL App (1st) 150836, ¶ 46.

¶ 42        In addressing this dispute, the appellate court in *Zareski* noted that the federal constitution gives defendants the right to "effective assistance of counsel at trial and on direct appeal." *Zareski*, 2017 IL App (1st) 150836, ¶ 48. In all but the rarest cases, a defendant must demonstrate that he or she sustained prejudice before obtaining relief for counsel's constitutionally deficient performance. *Zareski*, 2017 IL App (1st) 150836, ¶¶ 48-49. Specifically, in accordance with *Strickland v. Washington*, 466 U.S. 668 (1984), prejudice requires a showing that "there was

a reasonable probability of a different outcome had counsel performed their duties." *Zareski*, 2017 IL App (1st) 150836, ¶ 49. However, postconviction petitioners are not constitutionally entitled to effective assistance of counsel. *Zareski*, 2017 IL App (1st) 150836, ¶ 50. Instead, the Illinois legislature grants postconviction petitioners the right to reasonable assistance, which the *Zareski* court labeled an "inadequately defined" lower standard than effective assistance. *Zareski*, 2017 IL App (1st) 150836, ¶ 50.

¶ 43        According to the court in *Zareski*, because reasonable assistance is a lower standard than effective assistance, "it should be even more difficult for a defendant to prove that he or she received unreasonable assistance than to prove that he or she received ineffective assistance under *Strickland*." *Zareski*, 2017 IL App (1st) 150836, ¶ 50. Nevertheless, the court in *Zareski* recognized that our supreme court held in *Suarez* that if postconviction counsel does not comply with the duties outlined in Rule 651(c), a reviewing court must remand the matter without considering the merits of the defendant's postconviction claims. *Zareski*, 2017 IL App (1st) 150836, ¶ 52.

¶ 44        Relying on *Suarez*, the defendant in *Zareski* argued that, because his postconviction counsel "failed to formulate his claims properly in the postconviction petition," the defendant was entitled to a remand "regardless of whether those claims would have had any chance of success in postconviction." *Zareski*, 2017 IL App (1st) 150836, ¶ 53. The *Zareski* court deemed this an "odd outcome," given that (1) "in the constitutional context, only truly egregious failures allow for a new trial regardless of prejudice" and (2) "[t]he reasonable assistance standard *** is supposed to be even lower than the *Strickland* standard." *Zareski*, 2017 IL App (1st) 150836, ¶ 54. The *Zareski* court thus questioned how it could "reconcile *Suarez*'s holding with the Supreme Court's

statements that defendants are entitled to less assistance in postconviction than on direct appeal." *Zareski*, 2017 IL App (1st) 150836, ¶ 54.

¶ 45    The *Zareski* court determined that "the answer lies in Rule 651." *Zareski*, 2017 IL App (1st) 150836, ¶ 55. Specifically, according to the *Zareski* court, "[t]he real key of the *Suarez* holding was not that Suarez's counsel had provided unreasonable assistance, but that Suarez's counsel had violated a supreme court rule." *Zareski*, 2017 IL App (1st) 150836, ¶ 55. The *Zareski* court determined that *Suarez*'s logic does not extend to situations where Rule 651 does not guide counsel's conduct—*i.e.*, where retained counsel filed the initial postconviction petition. *Zareski*, 2017 IL App (1st) 150836, ¶ 55. In the *Zareski* court's view, a defendant who retains counsel at the first stage of postconviction proceedings is entitled to reasonable assistance but not "the additional protections of Rule 651 and *Suarez*'s holding." *Zareski*, 2017 IL App (1st) 150836, ¶ 55.

¶ 46    The *Zareski* court next considered how it should evaluate reasonable assistance apart from Rule 651. *Zareski*, 2017 IL App (1st) 150836, ¶ 58. The court noted that our supreme court has "never explicitly stated a standard" for evaluating reasonable assistance of counsel. *Zareski*, 2017 IL App (1st) 150836, ¶ 58. The State proposed implementing a "*Strickland*-like analysis," thus presuming that postconviction counsel was competent and requiring the defendant to show prejudice. *Zareski*, 2017 IL App (1st) 150836, ¶ 58. The defendant, on the other hand, proposed "evaluat[ing] reasonable assistance in tandem with Rule 651's requirements." *Zareski*, 2017 IL App (1st) 150836, ¶ 58.

¶ 47    The *Zareski* court adopted the "*Strickland*-like analysis," which "requires an evaluation of prejudice." *Zareski*, 2017 IL App (1st) 150836, ¶ 59. The court reasoned that the benefits of such approach included (1) the avoidance of "pointless remands to trial courts for repeated evaluation of claims that have no chance of success," (2) the familiarity of the *Strickland*

standard "to both the courts and attorneys," and (3) the ability to use the approach to evaluate claims of unreasonable assistance after a third-stage evidentiary hearing. *Zareski*, 2017 IL App (1st) 150836, ¶ 59. The court further observed that numerous states "use the *Strickland* standard to evaluate postconviction counsel." *Zareski*, 2017 IL App (1st) 150836, ¶ 60. Thus, to evaluate the defendant's contention that his counsel provided unreasonable assistance by failing to present certain claims properly, the *Zareski* court would consider whether the defendant sustained prejudice. *Zareski*, 2017 IL App (1st) 150836, ¶ 61. According to the court, if the defendant's "potential claim had no merit," the defendant "cannot receive postconviction relief on that claim, regardless of whether [the defendant's direct appeal and postconviction counsel] should have presented it *earlier*, better, or at all." (Emphasis added.) *Zareski*, 2017 IL App (1st) 150836, ¶ 61.

¶ 48 Here, defendant argues that his postconviction counsel should have filed the postconviction petition earlier to avoid most of defendant's claims being time-barred. Defendant asserts that his postconviction counsel, at the least, should have pleaded defendant's lack of culpable negligence for the late filing. Defendant also argues that his counsel should have presented some claims differently and presented additional claims. Defendant recognizes that, pursuant to *Zareski*, he is not entitled to a remand unless he identifies a meritorious postconviction claim. However, defendant asks us to reject *Zareski* and reconsider the holding of that case in light of *Johnson*, 2018 IL 122227, in which our supreme court recognized that a defendant who retains counsel at the first stage of postconviction proceedings is entitled to reasonable assistance. Defendant requests that we "apply the *Suarez* rule" here and hold that defendant "need not establish prejudice if he can show post-conviction counsel was unreasonable for failing to avoid procedural bars." At oral argument, defendant's appellate counsel asserted that defendant was not seeking to extend Rule 651 to first-stage petitioners who retain counsel. However, appellate

counsel urged us to apply a Rule "651(c)-like analysis." Appellate counsel proposed that we should remand without considering the merits of defendant's postconviction claims.

¶ 49    In *Johnson*, the defendant retained postconviction counsel, who filed the defendant's initial postconviction petition. *Johnson*, 2018 IL 122227, ¶ 5. The trial court summarily dismissed that petition at the first stage. *Johnson*, 2018 IL 122227, ¶ 5. The defendant then filed a timely *pro se* motion to reconsider, complaining that his counsel excluded multiple claims from the petition. *Johnson*, 2018 IL 122227, ¶¶ 6, 8. The trial court denied the defendant's motion to reconsider without considering the merits of the additional claims, determining that such claims were waived because they were not included in the initial petition filed by counsel. *Johnson*, 2018 IL 122227, ¶ 8.

¶ 50    On appeal to our supreme court, the specific issue in *Johnson* was whether a defendant who retains private counsel to file an initial postconviction petition is entitled to reasonable assistance at the first stage of proceedings. *Johnson*, 2018 IL 122227, ¶ 13. Our supreme court determined that a defendant in such position is entitled to reasonable assistance of counsel. *Johnson*, 2018 IL 122227, ¶ 23. In light of that holding, because the trial court did not "reach the substance" of the additional claims the defendant raised in his motion to reconsider, our supreme court remanded the matter for a determination of whether such claims were "frivolous or patently without merit." *Johnson*, 2018 IL 122227, ¶ 24. According to the court, if such claims were frivolous or patently without merit, "then the failure to include those claims would not amount to a denial of reasonable assistance of counsel, and defendant would not be entitled to relief on his motion to reconsider." *Johnson*, 2018 IL 122227, ¶ 24. On the other hand, if any of the defendant's additional claims were not frivolous or patently without merit, and if the defendant's postconviction counsel "was aware of such claims and refused to include them," then

the defendant "should be permitted to amend his petition with the claims and proceed to the second stage of postconviction proceedings." *Johnson*, 2018 IL 122227, ¶ 24.

¶ 51 We reject defendant's contention that *Johnson* calls *Zareski*'s holding into question. The *Johnson* court did not mention *Zareski*, and the issues in the two cases were different. As explained above, *Zareski* considered the proper standard for evaluating claims of unreasonable assistance when such claims are (1) raised in an appeal from a second-stage dismissal and (2) asserted against an attorney who filed the initial postconviction petition on the defendant's behalf. *Johnson*, by contrast, addressed whether a defendant may challenge the reasonableness of retained postconviction counsel's performance in a *pro se* motion to reconsider filed in the trial court after a first-stage dismissal. Moreover, the court in *Johnson* said that the defendant was not entitled to advance to the second stage of postconviction proceedings if the additional claims he identified were frivolous or patently without merit. If anything, *Johnson* thus supports *Zareski*'s holding that the merits of a defendant's postconviction claims are relevant to evaluating whether retained counsel provided reasonable assistance.

¶ 52 Defendant directs our attention to language in *Johnson* about placing all postconviction petitioners "on an equal footing" at the first stage, irrespective of whether they retain counsel. *Johnson*, 2018 IL 122227, ¶ 21. Defendant asserts that had he filed an untimely *pro se* initial petition that proceeded to the second stage, and had appointed counsel then failed to amend that petition to allege a lack of culpable negligence, counsel's assistance would be deemed unreasonable under Rule 651(c), and the matter would be remanded without considering the merits of the postconviction claims. Defendant thus seeks to be put on equal footing with a *pro se* petitioner.

¶ 53 The supreme court's remark in *Johnson* about equal footing was in response to a point raised by the appellate court. Our supreme court has cautioned that we should not use general language from its opinions to support a rule far broader than what was presented by the specific circumstances of the case. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 30. We thus reject defendant's contention that the court's comment in *Johnson* about "equal footing" casts doubt on *Zareski*'s analysis of an unrelated issue.

¶ 54 Accordingly, we determine that *Zareski* remains viable in light of *Johnson*. The "*Strickland*-like analysis" that *Zareski* adopted is a familiar and manageable framework for evaluating claims of unreasonable assistance where retained counsel filed the defendant's initial postconviction petition. We note that we cited *Zareski*'s standard with approval in three unpublished orders just last year. See *People v. Beverly*, 2022 IL App (4th) 210677-U, ¶ 87; *People v. Compton*, 2022 IL App (4th) 210032-U, ¶¶ 33, 36; and *People v. Schoolcraft*, 2022 IL App (4th) 200601-U, ¶ 41. We agree with *Zareski* that the "automatic-remand rule" announced in *Suarez* and other cases is implicated only when counsel violated Rule 651(c). Where Rule 651(c) does not apply, to justify a remand on a claim of unreasonable assistance, a defendant must identify some meritorious postconviction claim that he or she lost due to counsel's conduct. In other words, had counsel done the things the defendant claims should have been done (including filing the petition on time or attempting to excuse the untimely filing), the postconviction proceedings would have advanced to the next stage or the trial court would have granted the defendant postconviction relief.

¶ 55 Our conclusion is consistent with our supreme court's recent decision in *People v. Pingelton*, 2022 IL 127680, ¶ 50, where the court declined to apply *Suarez*'s rule, despite the court determining that the trial court violated the defendant's procedural due process rights at the second stage of postconviction proceedings. The supreme court noted that *Suarez* involved a situation

where "postconviction counsel's performance was 'so deficient that it amount[ed] to virtually no representation at all.' " *Pingelton*, 2022 IL 127680, ¶ 50 (quoting *Suarez*, 224 Ill. 2d at 48). The court explained that "the reasoning underlying the decision in *Suarez* is premised on the recognition that the failure to comply with Rule 651(c) could result in consequences that are difficult to ascertain." *Pingelton*, 2022 IL 127680, ¶ 50. By contrast, "[w]here the impact of the error is quantifiable and found to be harmless, automatic reversal and remand would serve no useful purpose and would merely delay the dismissal of the postconviction petition." *Pingelton*, 2022 IL 127680, ¶ 50.

¶ 56      Here, defendant's postconviction counsel's failure to file a timely petition was error. We note, however, that even the State failed to identify the proper deadline for the petition at the hearing on the State's motion to dismiss. Defendant's postconviction counsel advanced multiple detailed claims on defendant's behalf supported by affidavits. Thus, despite counsel's mistake as to the filing deadline, this was not a situation where counsel provided defendant virtually no representation at all. The impact of postconviction counsel's error is easily quantifiable if we consider the merits of defendant's postconviction claims.

¶ 57      The alternative that defendant suggests—a Rule "651(c)-like analysis"—is unworkable. It makes little sense to assess an attorney's performance pursuant to a rule that does not apply to him or her. Defendant's proposal also would lead to pointless remands for postconviction proceedings on meritless claims. With the benefit of hindsight and a little creativity, a defendant whose postconviction petition was dismissed could always think of additional claims that counsel might have included in the initial postconviction petition or claims that could have been presented differently. If, as defendant proposes, we cannot consider the merits of those additional claims when determining whether counsel provided reasonable assistance, the apparent

result would be that we would remand every case for further postconviction proceedings whenever a defendant complained that his or her retained counsel neglected to present a claim. That would be an absurd result and a waste of judicial resources.

¶ 58    Having established the framework for evaluating defendant's claim of unreasonable assistance, we will now address his specific contentions. Defendant proposes that two of his postconviction claims were meritorious: (1) his challenge to Raschke's historical-cell-site-analysis testimony and (2) his challenge to Pena's testimony about pictures on Facebook. Defendant further argues that his postconviction counsel provided unreasonable assistance by failing to develop and present claims pertaining to a *Brady* violation and ineffective assistance of trial counsel.

¶ 59                        2. *Challenge to Raschke's Testimony*

¶ 60    Defendant argues that he made a substantial showing in his postconviction petition that his due process rights were violated because Raschke's testimony lacked foundation. We hold that this claim lacks merit, as the Second District rejected a very similar challenge to Raschke's testimony in defendant's direct appeal. *Perez*, 2020 IL App (2d) 180073-U, ¶¶ 128-34; see also *People v. Blalock*, 2022 IL 126682, ¶ 37 (noting that "issues that were raised and decided on direct appeal are barred from postconviction consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited"). Additionally, the purpose of postconviction proceedings is to address substantial denials of constitutional rights (725 ILCS 5/122-1(a)(1) (West 2020)), not to repackage evidentiary challenges that were addressed on direct appeal. See *People v. Haines*, 2021 IL App (4th) 190612, ¶ 21 (rejecting a postconviction petitioner's attempt to recast a previously adjudicated sentencing issue "in constitutional clothing").

¶ 61          3. *Challenge to Pena's Description of What He Saw on Facebook*

¶ 62          Defendant also argues that he made a substantial showing in his postconviction petition that his trial counsel was ineffective for failing to preserve a best-evidence-rule challenge to Pena's description of what he saw on Facebook. We determine that this claim is forfeited. All of the facts attendant to this claim were included in the record on direct appeal, and defendant indeed challenged Pena's testimony on direct appeal. However, the appellate court declined to address the issue, as defendant did not cogently invoke the plain-error doctrine. *Perez*, 2020 IL App (2d) 180073-U, ¶¶ 142-44. Moreover, defendant did not claim in his postconviction petition that his appellate counsel was ineffective for failing to present the challenge to Pena's testimony in a way that would have allowed the court to address the issue on direct appeal. See *Turner*, 187 Ill. 2d at 413 (explaining that alleging ineffective assistance of appellate counsel in a postconviction petition can circumvent forfeiture).

¶ 63          We recognize that defendant's postconviction counsel also represented defendant on direct appeal, which could explain why counsel did not allege his own infectiveness. Forfeiture aside, even if Pena's description of what he saw on Facebook violated the best evidence rule, such error would not have resulted in a new trial had appellate counsel properly presented that challenge on direct appeal. Had defendant's appellate counsel cogently argued first-prong plain error, defendant could not have shown that the evidence was closely balanced. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. Here, Patton testified that defendant told her immediately after she heard gunshots that he shot somebody in the face, and Patton saw defendant holding a gun. Two witnesses, Pena and Brooks, testified that defendant later made inculpatory statements to

them. (Although Brooks's testimony was dubious in that it contradicted some of the known facts about the shooting, Pena's testimony did not suffer from the same infirmities.) An analysis of the phone connected to defendant showed movements on the night of the shooting consistent with the State's theory. Under the circumstances, we determine that the evidence was not closely balanced, so defendant would not have succeeded on direct appeal had his appellate counsel raised a cogent first-prong-plain-error challenge to Pena's description of what he saw on Facebook.

¶ 64    For similar reasons, defendant would not have succeeded had his appellate counsel argued that trial counsel was ineffective for failing to raise and preserve a best-evidence-rule challenge. To establish prejudice for such ineffective-assistance claim, defendant would have had to show on direct appeal "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. We conclude that there is no reasonable probability that the result of defendant's trial would have been different had the jury not heard Pena's description of what he saw on Facebook. As explained above, the evidence connecting defendant to the shooting was not closely balanced.

¶ 65    4. *Claims Not Included in the Postconviction Petition*

¶ 66    Defendant also maintains that his postconviction counsel provided unreasonable assistance by (1) failing to supplement the petition to develop a claim that the State committed a *Brady* violation and (2) failing to argue that trial counsel was ineffective for not calling Sanchez as a witness. Defendant's argument lacks merit.

¶ 67    Notably, defendant does not contend that the record contains information from which it could be argued that he made a substantial showing of a *Brady* violation. Defendant instead seems to speculate that his postconviction counsel might have been able to make a

substantial showing of a *Brady* violation had counsel further investigated the vague statements in Pena's text messages. Defendant's argument is flawed. The record does not contain information supporting a conclusion that postconviction counsel could have presented a meritorious *Brady* claim, so we cannot say that counsel provided unreasonable assistance in connection with that issue. See *Zareski*, 2017 IL App (1st) 150836, ¶¶ 58-59 (adopting a "*Strickland*-like analysis," pursuant to which the court presumes postconviction counsel was competent and requires the defendant to show prejudice).

¶ 68        The record also does not support defendant's assertion that his postconviction counsel failed to conduct an adequate investigation. Counsel drafted an initial petition presenting six detailed claims with accompanying evidentiary support. Counsel used the information in Pena's text messages to support a claim of actual innocence, not a *Brady* violation. Nevertheless, the trial court advanced defendant's petition to the second stage by spotting a potential *Brady* issue *sua sponte*. After the trial court did so, postconviction counsel told the court that he would need to amend the petition. When the matter returned to court, postconviction counsel said, "I conferred with my client. We're going to stand on the first original one." Thus, rather than showing that postconviction counsel failed to investigate defendant's potential *Brady* claim, the record supports an inference that counsel and defendant collectively decided not to amend the petition to include that claim.

¶ 69        Defendant's new contention that his trial counsel was ineffective for not calling Sanchez as a witness also lacks merit. Determining which witnesses to call typically is a matter of trial strategy, and strategic errors constitute ineffective assistance only where " 'counsel entirely fails to conduct any meaningful adversarial testing.' " (Internal quotation marks omitted.) *Custer*, 2019 IL 123339, ¶ 39 (quoting *People v. West*, 187 Ill. 2d 418, 432-33 (1999)). The record

confirms that defendant's trial counsel subjected the State's case to rigorous adversarial testing. Moreover, we note that Sanchez attested in his affidavit that he "was never questioned by *the police* as to whether [defendant] was present at the party" on the night of the shooting. (Emphasis added.) Sanchez did not claim that he never spoke with defendant's trial counsel. The record does not support defendant's contention that his trial counsel was ineffective for failing to call Sanchez as a witness.

¶ 70                    5. *Conclusion Regarding Unreasonable Assistance*

¶ 71          We determine that defendant did not sustain prejudice from his postconviction counsel's performance. Therefore, counsel did not provide unreasonable assistance.

¶ 72                              B. Actual Innocence

¶ 73          Defendant next argues that he made a substantial showing of actual innocence based on Boyd's affidavit and the DNA evidence.

¶ 74          A claim of actual innocence requires evidence that is "(1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Robinson*, 2020 IL 123849, ¶ 47. "Newly discovered" means that the evidence was discovered after trial and the petitioner could not have discovered it earlier through the exercise of due diligence. *Robinson*, 2020 IL 123849, ¶ 47. "Material" means that the evidence is "relevant and probative of the petitioner's innocence." *Robinson*, 2020 IL 123849, ¶ 47. "Noncumulative" means that the evidence "adds to the information that the fact finder heard at trial." *Robinson*, 2020 IL 123849, ¶ 47. The "conclusive character" requirement is "the most important element of an actual innocence claim"; it means that the new evidence, "when considered along with the trial evidence, would probably lead to a different result." *Robinson*, 2020 IL 123849, ¶ 47. In other words, "[t]he new evidence need not be entirely dispositive[,]" but

it must "place[ ] the trial evidence in a different light and undermine[ ] the court's confidence in the judgment of guilt." *Robinson*, 2020 IL 123849, ¶ 48.

¶ 75        We hold that defendant failed to make a substantial showing of actual innocence. The trial court found that Boyd's affidavit provided "possible sources of new evidence" but was "not new evidence itself." The court noted that Boyd had no personal information about the case, nor did she specify the details of other witnesses' potential testimony referenced in Pena's text messages. Without knowing the nature of the potential testimony referenced in the text messages, the court determined that defendant had not shown that such evidence was material, noncumulative, or conclusive. We agree with this assessment. Pena's vague statement in his text messages that he had information that an unspecified witness lied at trial does not undermine confidence in the judgment of guilt. Accepting defendant's assumption that Pena was implying that Brooks lied at trial, it was already evident to the jury that some of the things Brooks claimed defendant told him did not conform to the known facts about the shooting.

¶ 76        The trial court determined that the DNA evidence was newly discovered but not material, as "[t]he jury knew that the DNA on the weapon was not the defendant's." The court reasoned that "[t]he only help to the defendant to knowing this information earlier would have been to avoid making incriminatory statements to Mr. Pena trying to explain the presence of female DNA on the weapon." According to the court, "[b]ecause the DNA test does not even meet the materiality threshold, it cannot come anywhere near the requirement of undermining the court's confidence in the judgment of guilt." We agree with this assessment. The source of the female DNA on the murder weapon was a collateral issue at trial.

¶ 77                          III. CONCLUSION

¶ 78        For the reasons stated, we affirm the trial court's judgment.

- 26 -

¶ 79    Affirmed.

*People v. Perez*, 2023 IL App (4th) 220280

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Boone County, No. 13-CF-270; the Hon. C. Robert Tobin III, Judge, presiding. |
| **Attorneys for Appellant:** | Ian M. Barney and Madison N. Heckel, of Barney & Hourihane, LLP, of Evanston, for appellant. |
| **Attorneys for Appellee:** | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, David J. Robinson, and Melissa S. Schwoerer, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |