NOTICE
Decision filed 10/28/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230112-U

NO. 5-23-0112

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 16-CF-1063 |
| | ) | |
| DONTRELL NETTER, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Vaughan and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: Dismissal of defendant's postconviction petition is affirmed, where defendant's petition failed to make a substantial showing that trial counsel rendered ineffective assistance of counsel and failed to demonstrate that postconviction counsel rendered unreasonable assistance.

¶ 2    Defendant, Dontrell Netter, appeals the Champaign County circuit court's order granting the State's motion to dismiss his amended petition for postconviction relief at the second-stage proceedings. He argues that his petition made a substantial showing of ineffective assistance of trial counsel. Alternatively, he argues that postconviction counsel provided unreasonable assistance. For the following reasons, we affirm.

1

¶ 3                                    I. Background

¶ 4      A recitation of the facts of the case are contained in defendant's direct appeal. *People v. Netter*, 2019 IL App (4th) 180290-U. As such, we limit our recitation to those facts relevant to our disposition of this appeal and include additional facts in the analysis section as needed to address defendant's specific arguments.

¶ 5      On July 28, 2016, the State charged defendant by information with two counts of attempted aggravated criminal sexual assault (720 ILCS 5/8-4(a), 11-1.30(a)(5) (West 2014)), Class 1 felonies, alleging that defendant, on or about the month of July 2015, performed a substantial step toward the commission of aggravated criminal sexual assault, in that defendant exposed his penis and physically attempted to commit an act of sexual penetration with the victim, H.C., a person 60 years of age or older, knowing that H.C. was unable to understand the nature of the act or unable to give knowing consent (count I) and by the use of force or threat of force (count II). The State also alleged that defendant committed conspiracy (*id.* § 8-2(a)), a Class 2 felony, when defendant agreed with Channing Butler to commit attempted aggravated criminal sexual assault and furthered such offense by entering H.C.'s room and exposing his penis (count III). Additionally, on November 23, 2016, the State charged defendant by information with two counts of aggravated criminal sexual assault (*id.* § 11-1.30(a)(5)), Class X felonies, alleging that defendant made contact, however slight (count IV), and by the use of force (count V), between his penis and the mouth of H.C.

¶ 6      On December 4, 2017, the circuit court held defendant's three-day jury trial. The evidence demonstrated that Butler, a certified nursing assistant at Bickford Assisted Living in Champaign, Illinois, pretended to be a white woman online.[1] In this capacity, he communicated with multiple

---

[1]Butler used two fake names online, including "Cherokee" and "Taylor Banks Banks."

men for the purpose of luring them to Bickford to engage in sexual activity with Butler and/or residents of Bickford at the facility while working the night shift. Occasionally, Butler took pictures with his cell phone of interactions that took place between residents and men he invited to Bickford. Specific to July 12, 2015, the evidence demonstrated that defendant arrived at Bickford sometime after midnight. Defendant entered H.C.'s room, exposed his penis, and attempted to commit, or committed, an act of sexual penetration with H.C. by making contact with his penis and H.C.'s mouth. Moreover, evidence showed that Detective Patrick Simons of the City of Champaign Police Department used decoding software to uncover a digital photograph relevant to the underlying investigation that Butler generated, or created, on his cell phone on July 12, 2015, at 3:31 a.m. (Exhibit B-1). Butler kept the photograph on his cell phone following the incident. Exhibit B-1 depicted Butler's hand placed around H.C.'s face and the exposed penis of a black male standing near H.C.'s face. The black male with the exposed penis wore a shirt with blue and white horizontal strips. The photograph shows only the partial face of H.C.

¶ 7     Butler testified that he worked alone in the memory care unit on July 12, 2015, when defendant arrived at the facility. When defendant discovered that Butler was a male, Butler offered defendant "the lady," but defendant "turned it down." Specific to Exhibit B-1, Butler could not state with certainty that the black penis belonged to defendant. Butler testified, however, that defendant and H.C. were in the same room with him when he took the photo depicted in Exhibit B-1. The State moved to admit Exhibit B-1, and trial counsel objected. The following colloquy took place:

> "THE COURT: The objection's overruled, it may be published.
> MR. MCCLELLAN: Your Honor, there is no identification of that photograph.
> THE COURT: [Butler] said it was [defendant].
> MR. MCCLELLAN: Pardon?
> THE COURT: He identified [defendant] as the person in the photograph.

3

MR. MCCLELLAN: I didn't hear it that way, your Honor. I'm having trouble hearing, but I thought the question was—
THE COURT: Mr. McClellan, the objection is—
MR. MCCLELLAN:—was who else was in the room."

The circuit court, again, overruled trial counsel's objection.[2] Butler could not recall what defendant wore on July 12, 2015. Butler denied that defendant received or attempted to receive oral sex from H.C. in H.C.'s room, or that he and defendant "hook[ed] up" at Bickford on July 12, 2015. Butler denied that defendant ejaculated or "put his penis into her mouth and start moving it back and forth." Butler estimated that defendant was in H.C.'s room with Butler for "[m]aybe ten minutes, if that." Butler also denied that he and defendant were "on and off sexually."

¶ 8    The State played portions of Butler's video- and audio-recorded interviews with Detective Andre Davis of the City of Champaign Police Department for the jury. The recordings demonstrated that Butler indicated that defendant had a sexual encounter with Butler and then put his penis in H.C.'s mouth and "started moving it back and forth." Butler also stated that defendant ejaculated and remained in H.C.'s room for approximately 10 minutes. Butler told Detective Davis that he and defendant were "on and off sexually." Butler testified at trial that he recalled talking to Detective Davis, but he did not "know if [he] was talking about [defendant]." Butler ultimately testified that he believed the penis in Exhibit B-1 belonged to defendant.

¶ 9    On cross-examination, Butler testified that his statements to Detective Davis that he and defendant had a sexual relationship and a sexual encounter at Bickford were untrue. Butler testified that he contacted an individual named Trent Warren on Facebook. Butler and Warren exchanged naked pictures, and Butler invited Warren to Bickford. Regarding Exhibit B-1, Butler testified that he did not recall "if that's exactly [defendant] or not," although he did remember taking a picture

[2]The circuit court also admitted into evidence Exhibit B-2, which is the negative of Exhibit B-1.

4

of defendant. Butler, again, denied that defendant had "sex of any kind" with "a woman in that room." On redirect examination, Butler testified that he invited two light-skinned, Caucasian men, Warren and another man named Dean Goble, to Bickford at different times than defendant.

¶ 10    Detective Davis testified that he monitored defendant's telephone calls during his incarceration at the Champaign County jail. Two recordings indicated that defendant, while talking to his grandmother, acknowledged that he communicated on Facebook and via text message with Butler, who he initially thought was a female. Defendant admitted that he went to the "nursing home" at 2 a.m. when it was dark, so the building looked like a house. Defendant met Butler, at which time defendant asked him about the female. Butler told defendant that he wanted defendant to do things with an "old lady." Defendant immediately left.

¶ 11    Defendant testified on his own behalf. Defendant admitted that he went to Bickford in July 2015. He, however, thought Bickford was a home, not a nursing home or assisted living facility. Defendant admitted that he flirted online and via text messages with "Taylor," who he believed to be a white woman. Defendant agreed to meet Taylor, who was really Butler, to have sex with Taylor or "a woman of 50 years old." When defendant entered Bickford, Butler admitted that he was Taylor. In the "mood to have sex," defendant asked Butler about "[t]he other woman." Butler walked defendant to H.C.'s room. Defendant observed H.C. sitting in a chair close to a bed. Defendant denied that he entered H.C.'s room or got close to her. He testified that he left immediately. On parole at the time, defendant did not call the police. Defendant denied that his penis was photographed in Exhibit B-1. Defendant denied that he wore a shirt with horizontal stripes, testifying, instead, that he wore "a white Nike jacket, zip ups, drawstrings on the hood, has a hood; black Nike sweatpants, black Nike shoes, and a white T-shirt" on July 12, 2015. Following the close of evidence, the jury found defendant guilty on each charged offense.

5

¶ 12 On January 4, 2018, defendant filed a posttrial motion for a judgment notwithstanding the verdict or a new trial, which the circuit court denied following a hearing. Subsequently, the court sentenced defendant to 30 years in prison on count IV, and all other offenses merged into this offense.

¶ 13 On February 9, 2018, defendant filed a motion to reconsider his sentence, which the circuit court denied. Defendant filed a timely notice of appeal. On appeal, our colleagues in the Fourth District, with one justice dissenting, affirmed the circuit court's judgment. *Netter*, 2019 IL App (4th) 180290-U.[3] On August 20, 2019, the appellate court issued its mandate.

¶ 14 On December 19, 2019, defendant, represented by counsel, filed a petition for postconviction relief pursuant to section 122-1 of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). Defendant raised four claims based on the alleged ineffective assistance of trial counsel, including that trial counsel (1) unreasonably focused on counsel's relationships with prosecution witnesses; (2) could not hear, which hindered counsel's ability to question witnesses and argue on defendant's behalf; (3) failed to make cogent and timely objections and introduce evidence to support defendant's explanation of events; and (4) failed to introduce digital forensic evidence that showed a different black man with his penis exposed in the presence of H.C. on July 12, 2015. Specific to the last issue, defendant maintained that discovery revealed the existence of two additional digital images from Butler's phone "of another African American male attempting to place his penis in [the victim's] mouth" (Petitioner's

---

[3]Justice Knecht dissented, noting that Butler, "a witness of many opinions [who] was willing to change them to suit the question or situation," provided inconsistent testimony. *Id.* ¶ 107. In overruling trial counsel's objection to the admission of Exhibit B-1 into evidence, Justice Knecht believed that the circuit court misstated the evidence when it stated, " '[Butler] said it was him[,]' " and then stated, " '[Butler] identified [defendant] as the person in the photograph.' " *Id.* ¶ 108. Accordingly, Justice Knecht believed that the court's assertions amounted to prejudicial error that undermined any confidence in the verdict. *Id.* ¶ 110.

Exhibits 2 and 3), which trial counsel failed to present to "explain why Butler was confused ***" at trial regarding who was depicted in Exhibit B-1. Defendant argued that a reasonable probability existed that the introduction of Petitioner's Exhibits 2 and 3 would have resulted in his acquittal. Postconviction counsel did not attach Petitioner's Exhibits 2 and 3 to defendant's petition.

¶ 15    On April 16, 2020, the circuit court advanced defendant's petition to the second stage after the court failed to take action within 90 days of postconviction counsel filing defendant's original petition. In advancing defendant's petition, the court stated the following: "Due to the gross incompetence of the Circuit Clerk, this court now forwards *** Defendant's petition to the State for a response by May 1, 2020."

¶ 16    On April 28, 2020, the State filed a motion to dismiss defendant's petition, arguing that the issues raised by defendant were barred by the principles of *res judicata*. Alternatively, the State asserted that defendant failed to make a substantial showing of a constitutional violation. The State asserted that defendant's claim of ineffective assistance of trial counsel regarding Petitioner's Exhibits 2 and 3 was "conclusory, speculative, and unsupported." The State also asserted that defendant's petition lacked the affidavit of Butler "as to what, if anything, *** Butler would say on the content of any said images or the persons depicted therein," in violation of section 122-2 of the Act (725 ILCS 5/122-2 (West 2014)).

¶ 17    On September 2, 2020, the circuit court dismissed defendant's postconviction petition as "frivolous" and "patently without merit." The court stated that, "[h]ad the Champaign County Circuit Clerk forwarded Defendant's petition in a timely manner[,] it would have been dismissed by this Court" and not advanced to the second stage of postconviction proceedings. The court ultimately concluded the State's motion to dismiss was "well-taken" and that defendant's claimed errors had been decided on direct appeal.

¶ 18     On September 3, 2020, defendant filed a motion to reconsider. Defendant argued that trial counsel forwarded the State an amended petition and the parties signed an agreed order to provide defendant leave to file his amended petition before the circuit court dismissed his petition. Defendant maintained that trial counsel prepared to forward the agreed order to the court at the time counsel became aware of the court's dismissal of defendant's petition. The same day, the State filed a response, raising no objection to defendant's motion to reconsider or his filing of an amended postconviction petition. The court subsequently granted defendant leave to file an amended petition.

¶ 19     On September 29, 2020, defendant filed an amended postconviction petition. Defendant asserted the same arguments as in the original petition and also included that trial counsel failed to introduce Petitioner's Exhibits 2 and 3 and an "Extraction Report" (Petitioner's Exhibit 4), which demonstrated that the images contained in Petitioner's Exhibits 2 and 3 were taken on July 12, 2015, at 1:22:11 and 1:31:12. Petitioner's Exhibit 2 showed a black male standing near H.C., who is sitting in a chair. Petitioner's Exhibit 3 showed the same individual holding his penis with his right hand near H.C.'s face, while using his left hand to hold onto H.C.'s face.

¶ 20     Postconviction counsel argued that trial counsel "could have introduced the [additional] digital images of multiple African Americans with H.C. *** to explain why Butler was confused about Exhibit B1 and B2 when he was interviewed by the police and why Butler could not identify [defendant] in Exhibit B1 and B2, which were actually digital images of another African American male." Postconviction counsel further argued that the evidence demonstrated that Butler contacted multiple individuals other than defendant to engage in sexual activities with him or a resident of Bickford in summer 2015. As such, trial counsel failed to cross-examine Butler about all the photographs generated on July 12, 2015. Thus, defendant argued that trial counsel should have

introduced Petitioner's Exhibits 2, 3, and 4 to show that another black male engaged in sexual activity with H.C. on July 12, 2015, to challenge Butler's credibility concerning Butler's prior identification of defendant as the male in Exhibit B-1. Postconviction counsel attached Petitioner's Exhibits 2, 3, and 4 to the amended petition under seal. The petition did not contain an attached affidavit.

¶ 21　Also on September 29, 2020, the State filed a motion to dismiss defendant's amended petition. With regard to Petitioner's Exhibits 2, 3, and 4, the State maintained that defendant's claims were "conclusory, speculative, and unsupported." The State pointed out that defendant's petition lacked the affidavit of Butler.

¶ 22　On October 2, 2020, the circuit court dismissed defendant's amended petition as "frivolous" and "patently without merit." Defendant filed a timely notice of appeal. On appeal, our colleagues in the Fourth District reversed the circuit court's dismissal of defendant's amended postconviction petition at the second stage, finding that defendant did not receive notice and an opportunity to be heard before the court ruled on the State's motion to dismiss his amended petition. *People v. Netter*, 2022 IL App (4th) 200549-U. Specifically, the court determined that the State mailed the motion to dismiss to the wrong address and only two days before the court's dismissal of defendant's petition, thus, providing defendant with no notice of the State's filing of its motion to dismiss and no meaningful opportunity for defendant to be heard on the motion through either a hearing or the filing of a written response. *Id.* ¶¶ 29, 32. On February 9, 2022, the appellate court issued its mandate.

¶ 23　On August 17, 2022, the circuit court held a hearing on the State's motion to dismiss on remand. From the outset, the State argued, and postconviction counsel conceded, that defendant's first three arguments in his amended postconviction petition were barred by the principles of

*res judicata*, provided the Fourth District addressed the issues on direct appeal. With regard to the fourth issue—trial counsel failed to introduce certain digital forensic evidence—postconviction counsel argued that the most important part of the amended petition was that "Butler invited multiple people to Bickford to engage in these horrible activities with the *** victim in this case." Postconviction counsel also argued that Butler lured multiple individuals to Bickford over a period of time, which "[wa]s the key" to understanding Butler's confusion as to who the individual is in Exhibit B-1. Postconviction counsel continued to argue that "there was a lot of confusion as to whether or not [Butler] actually identified that photo being of [defendant] during the trial." The following colloquy took place:

> "THE COURT: [The State] argues that your client testified about what he was wearing that night and the person in the photo that you think [trial counsel] should have introduced *** is dressed similarly, and therefore it had to have been tactical decision by [trial counsel] not to put it in because your client would have been admitting wearing the same clothes that are depicted in that photograph. So what's your argument to that?
> MR. LOVELACE [(DEFENDANT'S POSTCONVICTION COUNSEL)]: Well, *** my argument is, you know, *** whatever's in the photo is in the photo, and I—I think the value of that photo as being—as showing as multiple black men being invited to engage in those activities is more valuable than any sort of conclusion that the jury might reach as to someone slightly dressed as to a very generic description, dark pants and white T-shirts, and someone dressed in dark pants. I mean there's really nothing distinctive about the— the dress.
> THE COURT: No, but if—if your client had testified, I was wearing a red hoodie, and you know, purple sweatpants, and the picture you want introduced shows, you know, [a] white T-shirt—
> MR. LOVELACE: Yeah,
> THE COURT:—black hoodie or whatever, that I think would have far more relevance that there was a different black man there, and so why couldn't it have been a tactical decision by [trial counsel], your client says he was wearing something similar to that, and why sort of bolster the State's theory and put it in?
> MR. LOVELACE: Well, and I would ask the court *** to look at *** the photographs, and I'd say that maybe *** the exhibits, Petitioner's Exhibit *** 2 and 3 show maybe more than just dark pants. I mean, actually *** they're kind of a blue and white— it's difficult to describe, and I'd just ask the court to look at that. There are black tennis shoes, there is a plain white T-shirt. There's nothing else—I mean, it's literally just a plain white T-shirt, so there's really nothing distinctive that I think could necessarily tie [defendant's] testimony as to what he was wearing to the clothes in that photo."

10

¶ 24 Next, the circuit court and postconviction counsel discussed postconviction counsel's decision not to attach an affidavit of Butler to defendant's amended petition concerning Petitioner's Exhibits 2, 3, and 4. The following colloquy took place:

> "THE COURT: So I know you didn't attach an affidavit to the amended post-conviction petition, but that was filed on September 29th, 2020. Why did [you] not *** put anything in there, in the petition, about your efforts to try to obtain the affidavit but were unsuccessful?
>
> MR. LOVELACE [(DEFENDANT'S POSTCONVICTION COUNSEL)]: I could have. *** I didn't think it was necessary. Either I can obtain an affidavit or I can't obtain an affidavit, and as the court knows, I can't force someone to write an affidavit. But *** I will tell the court as I'm here today that I made multiple attempts and *** again as an officer of the court, I know it was in 2020, May of 2020 that I met with him. I had a follow-up phone call with [Butler], I believe, after that, as well as would have mailed him correspondence. And then prior, between the time of the Appellate Court granting the appeal and I'm here today, I spoke with him on the phone and I made the same request, and I sent him an affidavit, just a blank form to use, and he did not send it back."

In response, the State reiterated that "[n]o witness has signed an affidavit telling this court that if called to testify, I would say that that's not [defendant]" in Petitioner's Exhibits 2 and 3. The State further argued: "It's not supported by the record, and as I stressed before, it's positively rebutted by the record because the clothing depicted in Petitioner's Exhibits 2 and 3 is the clothing the defendant himself describes himself as wearing on the night of the offense." As such, the State stated, "So it's positively rebutting the claim that oh, that's not [defendant]. You can't see the faces, it's not obvious."

¶ 25 Following argument by the parties, the circuit court dismissed defendant's amended postconviction petition. In dismissing defendant's petition, the court addressed postconviction counsel's failure to attach an affidavit of Butler, stating the following:

> "I think it would have been better practice to have said in the amended petition that counsel had attempted to contact Mr. Butler, he was refusing to sign an affidavit, but based on representations as an officer of the court, [postconviction counsel] believed that Mr. Butler would have said A, B, and C, but that wasn't produced.
>
> I now hear arguments from counsel only as to what Mr. Butler would have said. I have concerns about that process procedurally."

11

The court then addressed defendant's claim of ineffective assistance of trial counsel regarding Petitioner's Exhibits 2 and 3, stating the following:

"[I]t appears that the record shows that the defendant did testify and identified what he was wearing that night. And the representations are that photographs, Exhibit[s] 2 and 3 depict someone, someone in clothing that is relatively consistent to what [defendant] says he was wearing that night. So it's a fair argument by the State to say that it was reasonable for [trial counsel] to not introduce those photographs because they corroborate that the defendant was present, and corroborate the fact that the defendant committed an attempted sexual act towards the victim.
       With respect to prejudice, again introducing those photographs corroborates the defendant's statement that he was there, what he was wearing, corroborates the other evidence that the defendant may have very well have attempted a sexual assault of the victim.
       *** I think that the photographs, if introduced, didn't help [defendant]; in fact, may very well have been against his interest, and I think a reasonable attorney would have not introduced them.
       I'm not sure there's any prejudice to the defendant for them not being introduced. *** The only issue here is about the two photographs, and it's speculative, its conclusory that Mr. Butler would say those photographs are not the defendant. We have the defendant's testimony, we have *** other evidence introduced by the State, including jail phone calls that implicate him. *** I cannot find as a matter of law that it's a substantial showing that [trial counsel] committed ineffective assistance of counsel."

¶ 26     On September 16, 2022, defendant filed a motion to reconsider. Defendant argued that postconviction counsel represented before the circuit court that he met with Butler on June 24, 2020. At that time, postconviction counsel showed Butler Petitioner's Exhibits 2 and 3, and Butler indicated that defendant was not the black male in those photos. Butler did not sign a statement attesting to this identification. On February 15, 2022, postconviction counsel spoke with Butler on the phone. Butler, again, refused to sign a statement. Postconviction counsel further stated that he first learned on August 31, 2022, that defendant had "several visible tattoos on both of his arms" in 2015. Specifically, postconviction counsel asserted that defendant would testify and provide photographic evidence of visible tattoos on his left forearm ("I love [heart symbol] Patricia"; a portrait of Jesus; the Gucci symbol; the Fendi symbol; and "Lord forgive me of my sins"), on the top of his left hand (a money symbol), right wrist (crescent moon with a star (the Turkish Flag),

12

right forearm ("I'm doing me"; "YOLO"; and a monkey face emoji), and on the top of his right hand (a money symbol). Accordingly, because the black male photographed in the exhibits had no visible tattoos on his right and left arms, defendant argued that a jury could not conclude that defendant was pictured in Petitioner's Exhibits 2 and 3. Postconviction counsel attached a statement of defendant asserting that he had the above referenced tattoos on his person on July 12, 2015. Postconviction counsel did not attach photographic evidence of defendant's alleged tattoos.

¶ 27 On February 24, 2023, the circuit court denied defendant's motion to reconsider. In denying defendant's motion, the court rejected defendant's argument that his tattoos were newly discovered evidence, reasoning that "the fact that [d]efendant had tattoos on his arms in 2015 was something known to [d]efendant himself and available, with due diligence, to be found by trial and/or post-conviction counsel." Defendant filed a timely notice of appeal.

¶ 28                                    II. Analysis

¶ 29 On appeal, defendant argues that the circuit court erred by dismissing his amended postconviction petition. Defendant argues that he demonstrated a substantial showing that he received ineffective assistance of counsel when trial counsel failed to introduce into evidence digital forensic evidence (Petitioner's Exhibits 2 and 3) found on Butler's phone. Defendant argued that trial counsel's failure was objectively unreasonable because Petitioner's Exhibits 2 and 3 would have proven that a second black male visited H.C. on July 12, 2015, which would have undermined Butler's equivocal identification at trial that the individual in Exhibit B-1 "had to depict [defendant]." We cannot agree.

¶ 30 The Act provides a means by which a defendant may challenge his conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). "To be entitled to postconviction relief, a defendant must show that he has suffered a

13

substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged." *Id.* Proceedings under the Act are divided into three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court may dismiss a postconviction petition that is "frivolous or *** patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). Accordingly, the petition advances to the second stage if (1) the court fails to rule on the petition within the 90-day period, regardless of the petition's merit (*People v. Harris*, 224 Ill. 2d 115, 129 (2007)), or (2) the facts alleged in the petition state an arguable claim of constitutional deprivation (*People v. Hodges*, 234 Ill. 2d 1, 16 (2009)).

¶ 31     At the second stage, the defendant must make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. Such a showing is made when the petition's well-pled allegations, if proven at an evidentiary hearing, would entitle the defendant to relief. *Id.* ¶ 35. The circuit court does not engage in fact-finding or credibility determinations at this stage; rather, all well-pleaded facts not positively rebutted by the original trial record are taken as true. *Id.* Also, the State may file a motion to dismiss or answer the petition. *Id.* "If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009) (citing *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)). If the petition fails to make a substantial showing of a constitutional violation, it is dismissed. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). This court reviews the circuit court's determination at the second stage *de novo*. *Pendleton*, 223 Ill. 2d at 473.

¶ 32     Defendants have a constitutional right to the effective assistance of counsel under the sixth amendment to the United States Constitution and the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*,

14

104 Ill. 2d 504 (1984) (adopting *Strickland*). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 687). "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (citing *Strickland*, 466 U.S. at 694). "To satisfy the deficient performance prong of *Strickland*, a defendant must show that his counsel's performance was so inadequate 'that counsel was not functioning as the "counsel" guaranteed by the sixth amendment' and, also, must overcome the strong presumption that any challenged action or inaction may have been the product of sound trial strategy." *People v. Dupree*, 2018 IL 122307, ¶ 44 (quoting *People v. Evans*, 186 Ill. 2d 83, 93 (1999)). "Based on the second-stage procedural posture of the instant case, the relevant question is whether the allegations of the petition, supported by the trial record and the accompanying affidavits, demonstrate a substantial constitutional deprivation which requires an evidentiary hearing." *People v. Makiel*, 358 Ill. App. 3d 102, 106 (2005) (citing *Coleman*, 183 Ill. 2d at 381). With this in mind, we consider defendant's claims.

¶ 33     Here, defendant's allegation that trial counsel's performance was deficient is insufficient to make a substantial showing of ineffective assistance of trial counsel. Contrary to defendant's allegation that trial counsel was ineffective for failing to introduce Petitioner's Exhibits 2 and 3, trial counsel's decision not to introduce such evidence constitutes reasonable trial strategy. While counsel could have introduced Petitioner's Exhibits 2 and 3 into evidence, which depicted a second black male with H.C. at the nursing home on July 12, 2015, defendant testified that he wore a substantially similar outfit as the black male depicted in Petitioner's Exhibits 2 and 3. Specifically,

15

defendant testified that he wore "black Nike sweatpants, black Nike shoes, and a white T-shirt" to Bickford on July 12, 2015, and Petitioner's Exhibits 2 and 3 depicts a black male wearing black pants, black shoes, and a white T-shirt. Although Petitioner's Exhibits 2 and 3 are black-and-white photographs, we agree with the State that the color and style of the clothing (*i.e.*, a loose white t-shirt, black shoes with laces, and dark, baggy pants with a black strip of material on the side) in the images certainly corroborates defendant's testimony concerning his own clothing on July 12, 2015. Consequently, based on defendant's testimony and the fact that defendant admitted to visiting Bickford on July 12, 2015, we cannot conclude that trial counsel's decision to forego the introduction of Petitioner's Exhibits 2 and 3 amounted to deficient performance.

¶ 34    Accordingly, defendant was not entitled to an evidentiary hearing on his claim of ineffective assistance of trial counsel, where the record demonstrates that trial counsel was not deficient in his performance. *Coleman*, 183 Ill. 2d at 397 (if we find counsel's performance was not deficient, we need not reach the issue of prejudice). We, thus, cannot conclude that the circuit court erred by granting the State's motion to dismiss, where defendant's amended postconviction petition failed to make a substantial showing of a constitutional violation.

¶ 35    Alternatively, defendant contends that postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). He argues that, although counsel filed a Rule 651(c) certificate, his compliance is affirmatively rebutted by the record. Specifically, defendant argues that postconviction counsel failed to make amendments to the initial petition necessary for an adequate presentation of defendant's claims and actively argued against defendant's interests at the hearing on the State's motion to dismiss.

¶ 36    A postconviction petitioner is entitled "reasonable assistance" of counsel at the second stage of proceedings, which is " 'significantly lower than the [standard] mandated at trial by our

state and federal constitutions.' " *People v. Smith*, 2022 IL 126940, ¶ 35 (quoting *People v. Custer*, 2019 IL 123339, ¶ 30). Rule 651(c) requires a showing that postconviction counsel consulted with the defendant to ascertain contentions of deprivation of constitutional rights, examined the record of proceedings, and amended the *pro se* petition, *if necessary*. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Where postconviction counsel files a certificate attesting that he fulfilled these three obligations set forth by Rule 651(c), there is a rebuttable presumption that the petitioner received reasonable postconviction assistance. *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 14. If counsel did not comply with Rule 651(c), a reviewing court will not consider the merits of the defendant's postconviction claims but must remand for further second-stage proceedings "with the benefit of reasonable assistance of counsel." *People v. Turner*, 187 Ill. 2d 406, 417 (1999). Rule 651(c) does not apply where a petitioner retains counsel to file the initial postconviction petition. *People v. Richmond*, 188 Ill. 2d 376, 381 (1999); *People v. Cotto*, 2016 IL 119006, ¶ 41 ("Rule 651(c) applies only to a postconviction petition initially filed by a *pro se* defendant."). Nevertheless, a petitioner who retains counsel is entitled to reasonable assistance of counsel. *Cotto*, 2016 IL 119006, ¶¶ 41-42.

¶ 37    Here, Rule 651(c) does not apply, as defendant did not file a *pro se* postconviction petition. Rather, defendant retained counsel to file his initial and amended postconviction petitions. As stated above, when Rule 651(c) does not apply, the court applies a general reasonable assistance standard. *Id.*; *People v. Zareski*, 2017 IL App (1st) 150836, ¶¶ 50, 58-59. Faced with a similar situation, our First District colleagues in *Zareski* determined that a defendant must demonstrate that he sustained prejudice before obtaining relief for counsel's constitutionally deficient performance. 2017 IL App (1st) 150836, ¶ 59 (defendant raised claims of unreasonable assistance from a second-stage dismissal against retained attorney who filed the defendant's initial

17

postconviction petition). In accordance with *Strickland*, 466 U.S. at 694, prejudice requires a showing "that there was a reasonable probability of a different outcome had counsel performed their duties." *Id.* ¶ 49. Where a potential claim has no merit, the defendant cannot receive postconviction relief no matter how postconviction counsel presented it. *Id.* ¶ 61; see *People v. Perez*, 2023 IL App (4th) 220280, ¶¶ 48, 51; *People v. Garrett*, 2023 IL App (3d) 210305, ¶ 20; and *People v. Delgado*, 2022 IL App (3d) 210008, ¶¶ 20, 25.

¶ 38 Defendant first argues that postconviction counsel provided unreasonable assistance by failing to file Butler's affidavit or explaining the absence of the affidavit in defendant's postconviction petition. Pursuant to section 122-2 of the Act, postconviction counsel erred by failing to file an affidavit or explaining the absence of the attached affidavit. 725 ILCS 5/122-2 (West 2014) (A petition filed under the Act must include "affidavits, records, or other evidence" to "support[ ] its allegations," or else it must "state why the same are not attached."). Despite postconviction counsel's failure to properly document his inability to obtain Butler's affidavit, the record supports that counsel believed he had a duty under the Act and sought to fulfill this duty on multiple occasions. Postconviction counsel was unsuccessful in his efforts. Defendant argues, however, that, had postconviction counsel explained his unsuccessful attempts in defendant's petition, the circuit court "could have subpoenaed [Butler] to testify at a third-stage evidentiary hearing." Defendant fails to cite law to support his contention, and his contention is vague and speculative at best. Even if postconviction counsel explained the absence of the affidavit in defendant's amended petition, we agree with the State that the inclusion of such an explanation would not have demonstrated a meritorious claim. In fact, we believe the photographs would have hindered, not helped, defendant's cause, given defendant testified that he wore a similar outfit as the clothing depicted in Petitioner's Exhibits 2 and 3—images that were taken on July 12, 2015,

when defendant was present at Bickford. Accordingly, we cannot conclude that defendant suffered prejudice by postconviction counsel's failure to attach Butler's affidavit or provide an explanation as to its absence. Where defendant has failed to identify a meritorious postconviction claim, he is not entitled to remand. *Zareski*, 2017 IL App (1st) 150836, ¶ 61.

¶ 39 Next, defendant argues that postconviction counsel provided unreasonable assistance by omitting facts that supported defendant's claim. Specifically, defendant argues that postconviction counsel omitted that defendant had visible tattoos on his left forearm and hand and that no tattoos of this kind were visible in Petitioner's Exhibits 2 and 3. As such, defendant contends that a jury could not conclude that the person depicted in Petitioner's Exhibits 2 and 3 was defendant. We cannot agree.

¶ 40 A review of defendant's motion to reconsider demonstrates that postconviction counsel first learned on August 31, 2022, that defendant had "several visible tattoos on both of his arms" in 2015. We simply cannot conclude that postconviction counsel provided unreasonable assistance, where the record reveals that he learned about defendant's tattoos almost two years after he filed the amended petition and two weeks after the hearing on the State's motion to dismiss. We note that defendant did not attach photos of his alleged tattoos to his motion to reconsider. As such, even if defendant had several tattoos in the alleged placements, Petitioner's Exhibit 2 depicts only part of the individual's right hand, which leaves this court to speculate as to the placement and size of the alleged tattoo (a money sign) on an individual who is black in a black-and-white photo. Moreover, Petitioner's Exhibit 3 does not depict the tops of the individual's hands, forearms, or right wrist. Thus, it is very possible that the black man in the photographs had tattoos in the alleged placements, but the photographs do not depict the areas of the alleged tattoos. Again, this court is left to speculate. Lastly, even if counsel would have learned about defendant's alleged tattoos at

19

the time he filed the amended petition, we cannot conclude that defendant would have a meritorious claim, where Petitioner's Exhibits 2 and 3 corroborated defendant's own testimony as to what he wore on the night he visited Bickford and saw H.C. and failed to demonstrate defendant's alleged tattoos.

¶ 41 Finally, defendant argues that postconviction counsel argued against defendant's interests, amounting to unreasonable assistance, where counsel conceded at the hearing on the State's motion to dismiss that the first three issues contained in defendant's petition were barred by the principles of *res judicata*. Defendant raised this issue for the first time on appeal. As such, this issue is forfeited. *People v. Jones*, 213 Ill. 2d 498, 505 (2004).

¶ 42                                III. Conclusion

¶ 43 For the reasons stated, we affirm the judgment of the circuit court of Champaign County granting the State's motion to dismiss defendant's amended postconviction petition.


¶ 44 Affirmed.