NOTICE
Decision filed 11/22/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 190088-U

NO. 5-19-0088

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 82-CF-79 |
| | ) | |
| WILLIAM T. JONES, | ) | Honorable |
| | ) | Michael J. Valentine, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the judgment of the trial court dismissing the defendant's successive postconviction petition where postconviction counsel did not render unreasonable assistance of counsel and the defendant failed to demonstrate that the new evidence in support of actual innocence was of such conclusive character that it would probably change the results on retrial.

¶ 2    On January 5, 2018, the defendant, William T. Jones, filed a motion for leave to file a successive postconviction petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). The trial court granted the defendant's motion on March 14, 2018, and the State filed a motion to dismiss the defendant's successive petition on June 13, 2018. The trial court conducted a hearing on the State's motion on August 15, 2018, and issued a written order granting the State's motion dismissing the defendant's petition, on November 7, 2018.

1

¶ 3     The defendant now appeals the judgment of the trial court dismissing his successive

petition, raising the sole issue of whether postconviction counsel rendered unreasonable assistance

of counsel. For the following reasons, we affirm the judgment of the trial court.

¶ 4                                I. BACKGROUND

¶ 5     On January 25, 1982, the home of James and Margaret Dare was burglarized and, during

the burglary, Margaret was stabbed to death, and James was stabbed and severely injured.

Following a retrial[1] on August 16, 1985, the defendant was found guilty of knowing murder in

violation of section 9-1(a)(2) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1981, ch. 38,

¶ 9-1(a)(2)); felony murder in violation of section 9-1(a)(3) of the Code (*id.* ¶ 9-1(a)(3)); attempted

murder in violation of sections 8-4(a) and 9-1(a)(3) of the Code (*id.* ¶¶ 8-4(a), 9-1(a)(3));

residential burglary in violation of section 19-3(a) of the Code (*id.* ¶ 19-3(a)); aggravated battery

in violation of section 12-4(b)(1) of the Code (*id.* ¶ 12-4(b)(1)); and armed robbery in violation of

section 18-2 of the Code (*id.* ¶ 18-2). On October 9, 1985, the trial court entered judgment on the

jury's verdicts.

¶ 6     The defendant waived his right to a jury for capital sentencing, and the trial court found

that one or more of the factors set forth in section 9-1 of the Code (*id.* ¶ 9-1) existed, and that there

were no mitigating factors sufficient to preclude a sentence of death. On October 16, 1985, the

defendant was sentenced to death for felony murder. The trial court reserved sentencing on the

remaining five counts until such time as the automatic appeal of the death sentence had been

completed. Our supreme court affirmed the defendant's death sentence. *People v. Jones*, 123 Ill.

2d 387, 428 (1988). Thereafter, the United States Supreme Court denied review of the defendant's

---

[1]The defendant's convictions from his first trial, conducted in July 1982, were reversed, and the matter remanded for a new trial, because some of the jurors were found to have shared racist materials and a nonjuror had been present in the jury room at some point during the jury's deliberations. *People v. Jones*, 105 Ill. 2d 342, 352-53 (1985).

direct appeal. *Jones v. Illinois*, 489 U.S. 1040 (1989). On January 10, 2003, the defendant's death sentence was commuted to natural life imprisonment by former Governor George Ryan. There is no indication within the record on appeal that the trial court sentenced, or took any other action, on the defendant's convictions for knowing murder, attempted murder, armed robbery, residential burglary, and aggravated battery.

¶ 7     The defendant filed his first petition for relief pursuant to the Act (Ill. Rev. Stat. 1989, ch. 38, ¶ 122-1 *et seq.*) on July 19, 1989. On motion by the State, the trial court dismissed the defendant's first petition on June 22, 1992, and the supreme court affirmed the trial court's judgment on May 20, 1993. *People v. Jones*, 155 Ill. 2d 357, 373 (1993). The defendant filed a second postconviction petition on August 15, 1996, that was dismissed by the trial court as being time-barred. The trial court's judgment was again affirmed on appeal. *People v. Jones*, 191 Ill. 2d 194, 202 (2000). The defendant filed a motion for leave to file a third postconviction petition on January 29, 2007, that was denied by the trial court and affirmed on appeal. *People v. Jones*, 379 Ill. App. 3d 1095 (2008) (table) (unpublished order under Supreme Court Rule 23).

¶ 8     The defendant filed a motion for leave to file a fourth postconviction petition and a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)) on December 13, 2010. Both petitions were denied by the trial court and the defendant appealed. On appeal, the defendant argued that the trial court violated the one-act, one-crime rule[2] by entering judgment on his conviction for felony murder. This court acknowledged that the defendant should have been sentenced on the more serious offense of knowing murder, and his conviction for felony murder vacated; however, the trial court dismissals were affirmed

---

[2]The one-act, one-crime rule prohibits multiple convictions when the convictions result from the same physical act or one of the offenses is a lesser-included of the other. See *People v. Bridgewater*, 388 Ill. App. 3d 787, 800 (2009).

upon a finding that the trial court's error was not subject to collateral attack since the trial court had authority to enter a conviction and sentence on either of the defendant's murder convictions and entering judgment on the felony murder was merely an error that rendered the judgment voidable, not void. *People v. Jones*, 2014 IL App (5th) 110074-U, ¶¶ 13-14, 17.

¶ 9    On January 5, 2018, the defendant, through counsel, again filed a motion for leave to file a successive postconviction petition (petition) based on newly discovered evidence and actual innocence.[3] The same day, defense counsel also filed an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate. The trial court granted the defendant's motion for leave on March 14, 2018, and it is this petition that is at issue in this appeal.

¶ 10    The defendant's petition asserted actual innocence based on blood evidence deoxyribonucleic acid (DNA) testing. The petition argued that in 2014, the defendant was granted the right to have the blood evidence, including the original blood standards taken from both the victims and the defendant during the investigation and numerous blood stains found within the victims' home and the defendant's clothing, DNA tested. The Illinois State Police (ISP) crime laboratory report, regarding the evidence submitted on December 5, 2014, and January 8, 2015, was completed on March 14, 2016.[4] According to the defendant's petition, the DNA testing determined that much of the blood evidence was contaminated, including the blood standard of the defendant. The petition states that the defendant's blood standard from exhibit 71T contained a mixture of two people, indicating that the defendant's sample had been tampered with and rendered exhibits 3, 4, 6, 8, 92A, 92F, and 92F4 (blood samples collected from the victim's home), submitted at trial, unreliable. The petition further stated that where the defendant's DNA was found

---

[3]The same motion for leave was also filed in the trial court on January 17, 2018.
[4]Blood evidence was also delivered to the laboratory in 2017, and the results were still pending at the time the defendant filed his motion for leave. A second ISP crime laboratory dated June 28, 2018, was received and provided to defense counsel and the defendant at a hearing conducted on August 15, 2018.

4

to be included in a mixture that excluded the victims, such as exhibit 6 (blood stains collected from the victims' southwest bedroom chest and black jewelry box), the evidence indicated that someone else, as yet unidentified, was present at the crime scene.

¶ 11    On June 13, 2018, the State filed a motion to dismiss the defendant's petition arguing that the petition contained only issues which had been waived. The State's motion also argued that the new DNA evidence did not exculpate the defendant since general blood typing was not the only evidence presented at trial, and that the word "contaminated" did not appear in the ISP crime laboratory report. The State's motion further stated that the ISP crime laboratory report indicated that the DNA profile in exhibits 3, 4, 6, 8, 92A, 92F2, and 92F4 matched that of the defendant, and that a detailed review of the ISP crime laboratory report did not present any evidence that someone else was present at the time of the murder. According to the State's motion, the ISP crime laboratory report corroborated the State's position that the individual with a blood type which matched the defendant's, was in fact, the defendant.

¶ 12    The same day, the State also filed a motion for buccal swab based on the ISP crime laboratory report statement that the defendant's buccal swab was required for a more complete analysis. Thus, the State requested that the trial court order the defendant to provide a buccal swab.

¶ 13    On August 15, 2018, the trial court conducted a hearing on the State's motion to dismiss and arguments were heard. At the conclusion of the hearing, both parties requested that, if the petition was not dismissed, additional time be allowed prior to conducting an evidentiary hearing in order for the State's motion to compel a buccal swab to be heard, and the remaining DNA testing to be completed. The trial court took the matter under advisement.

¶ 14    The trial court issued its decision in a written order dated November 7, 2018. The written order stated, *inter alia*, as follows:

5

"However, even assuming that the defendant's blood sample and all of the blood evidence produced at trial was deemed completely unreliable, suppressed and not admitted during the defendant's jury trial, or, in the alternative, attempted to be used as evidence by the defense, this court fails to find that the defendant makes a substantial showing of constitutional violation through a showing of actual innocence."

¶ 15    Thus, based on the entire reasoning within the written order, the trial court found that the DNA evidence was not so conclusive such that it would probably change the result on retrial or that no reasonable juror could find the defendant not guilty based on the evidence presented at trial. Therefore, the trial court granted the State's motion to dismiss. The defendant filed a notice of appeal, *pro se*, on November 26, 2018.

¶ 16    On December 10, 2018, defense counsel filed a motion to withdraw as counsel. The motion stated that, due to the scheduling policies of the Illinois Department of Corrections, defense counsel was unable to speak with the defendant until November 20, 2018. During that telephone conversation, defense counsel stated that it was agreed that a motion to reconsider should be filed, however, the defendant had requested that defense counsel wait to file the motion until the defendant's suggested arguments were received. Defense counsel stated that she was not aware of the defendant's *pro se* notice of appeal until it was received by the trial court on November 26, 2018. Once received, defense counsel stated that she had filed a motion to dismiss the appeal based on the premature filing of the notice of appeal.

¶ 17    Defense counsel's motion went on to state that the trial court could not rule on the motion to withdraw, or on a motion to reconsider, until such time as the appellate court dismissed the pending appeal. Defense counsel's motion stated that she and the defendant had a difference of

opinions regarding the motion to reconsider and, contemporaneously with the motion to withdraw, she was filing the defendant's *pro se* motion to reconsider dated November 20, 2018, with the understanding that it could not be decided until the trial court regains jurisdiction over the case. Defense counsel requested to withdraw from her representation of the defendant so that the defendant's *pro se* motion to reconsider could be heard by the trial court.

¶ 18     The defendant's *pro se* motion to reconsider requested that the trial court reconsider its November 8, 2018, dismissal of his petition and grant him an evidentiary hearing. The motion raised several issues not contained in this petition and requested clarification of whether the trial court found that the blood evidence had been tampered with and/or contaminated, and whether the blood evidence should be suppressed. The defendant filed an amended motion to reconsider on January 2, 2019.

¶ 19     On January 11, 2019, this court granted the defendant's motion to dismiss his appeal as premature[5] and the State filed a response to the defendant's amended motion on January 29, 2019. On February 20, 2019, the trial court conducted a hearing on defense counsel's motion to withdraw and the defendant's *pro se* amended motion.[6] The defendant had no objection to defense counsel's withdrawal and the trial court granted the motion. The trial court then offered to appoint the defendant a different postconviction counsel and the defendant declined, indicating that he wished to proceed *pro se*. After arguments, the trial court denied the defendant's amended motion to reconsider. The defendant filed a notice of appeal on February 25, 2019.

---

[5]*People v. Jones*, No. 5-18-0556 (2019) (unpublished order).
[6]At the hearing, the defendant stated that his amended motion to reconsider was intended as a supplement to his motion to reconsider. The State had no objection to proceeding based on the reclassification of the amended motion. As such, for ease of reference, we will refer to the motion to reconsider, as supplemented by the amended motion, as the defendant's amended motion.

¶ 20    On October 8, 2020, the defendant filed a motion for supervisory order pursuant to Illinois Supreme Court Rule 383 (eff. July 1, 2017). The motion stated that the defendant had given his *pro se* motion to his attorney, who did not file it until December 10, 2018, which was beyond the 30-day time limit from the trial court's judgment of November 7, 2018. As such, the motion to reconsider did not affect the validity of the initial notice of appeal filed on November 26, 2018, and the dismissal of the defendant's initial appeal was the result of an error by counsel. Since that dismissal rendered the notice of appeal of February 25, 2019, untimely, the motion for supervisory order requested that our supreme court direct this court to consider the notice of appeal filed on February 25, 2019, as a properly perfected appeal from the dismissal of the defendant's petition on November 7, 2018. The motion for supervisory order was granted on October 19, 2020,[7] and this appeal followed.

¶ 21    On appeal, the defendant raises the sole issue of unreasonable assistance of postconviction counsel. The defendant argues that postconviction counsel raised a claim not cognizable under the Act, raised another claim that was necessarily legally deficient, and failed to raise a potentially meritorious claim.

¶ 22                                    II. ANALYSIS

¶ 23    In every appeal before this court, our first and independent duty is to review our jurisdiction. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). This court has jurisdiction to review final judgments, and in a criminal case, the final judgment is the sentence. Ill. S. Ct. R. 606(b) (eff. July 1, 2017); *People v. Michel*, 230 Ill. App. 3d 675, 678 (1992) ("An appeal cannot be entertained in the absence of a final judgment, and there is no final judgment in a criminal case until sentence is imposed."). With regard to appeals in postconviction proceedings, Illinois Supreme Court Rule

---

[7]*People v. Jones*, No. 131170 (Nov. 8, 2024).

651(a) (eff. July 1, 2017) provides an appeal of right from a postconviction proceeding's final judgment.

¶ 24   This case presents a unique jurisdictional question since the defendant was never sentenced, nor any other action taken,[8] regarding his convictions for knowing murder, attempted murder, armed robbery, residential burglary, and aggravated battery. The only conviction in which a sentence has been entered, thus constituting a final judgment and allowing for a postconviction proceeding, is the defendant's conviction for felony murder.

¶ 25   Therefore, we find that we have jurisdiction over the defendant's appeal of the dismissal of his petition as it relates to the defendant's felony murder conviction, and lack jurisdiction with regard to the dismissal of his petition as it relates to any of the defendant's other convictions in which no sentence has been imposed. Having established our jurisdictional limit, we now proceed to our analysis.

¶ 26   The Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his or her original trial or sentencing hearing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding is not an appeal from an underlying judgment, but rather a collateral attack on the judgment. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). As a collateral proceeding, a postconviction proceeding allows inquiry only into constitutional issues that were not and could not have been adjudicated in an appeal of the underlying judgment. *Id.*

¶ 27   The Act contemplates only one postconviction proceeding; however, case law has provided two bases upon which the bar against successive proceeding will be relaxed. *People v. Edwards*,

---

[8]A defendant may not be sentenced on all of the charges for which he or she was found guilty since some charges, by operation of law, may be merged into others or vacated pursuant to the one-act, one-crime rule. *People v. Smith*, 2021 IL App (1st) 200984, ¶ 28.

2012 IL 111711, ¶ 22. The first basis is when a petitioner can establish "cause and prejudice" for failure to raise the claim earlier, as codified in section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2018)). *Edwards*, 2012 IL 111711, ¶ 22. The second is the "fundamental miscarriage of justice" exception in which a petitioner must show actual innocence. *Id.* ¶ 23. The evidence of actual innocence must be (1) newly discovered, (2) not discoverable earlier through the exercise of due diligence, (3) material and not merely cumulative, and (4) of such conclusive character that it would probably change the result on retrial. *People v. Sanders*, 2016 IL 118123, ¶ 24. "The conclusive character of the new evidence is the most important element of an actual innocent claim." *People v. Robinson*, 2020 IL 123849, ¶ 47. The new evidence need not be entirely dispositive, but rather, the question becomes whether the fact finder would reach a different result after considering the prior evidence along with the new evidence. *Id.* ¶ 48.

¶ 28    Under either exception, a petitioner must seek leave of court to file a successive postconviction petition. *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010). "[L]eave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *Edwards*, 2012 IL 111711, ¶ 24. In this matter, the defendant was granted leave of court to file his successive petition on March 14, 2018.

¶ 29    Once leave of court is granted, the petition advances to the second stage. *People v. Jackson*, 2015 IL App (3d) 130575, ¶ 14. The standards at the second stage of postconviction proceedings are the same for successive petitions. *Sanders*, 2016 IL 118123, ¶ 37. At the second stage, an indigent petitioner can obtain appointed counsel, and the State can move to dismiss the petition. 725 ILCS 5/122-4, 122-5 (West 2018). The trial court is "foreclosed from engaging in any fact-finding because all well-pleaded facts not rebutted by the record are to be taken as true." *People*

*v. Phyfiher*, 361 Ill. App. 3d 881, 884 (2005). The defendant is required to demonstrate a "substantial showing of a constitutional violation" at the second stage. *People v. Bailey*, 2017 IL 121450, ¶ 18. A substantial showing is a measure of the legal sufficiency of the petition's allegations, which, if proven at an evidentiary hearing, would entitle the defendant to relief. *People v. Domagala*, 2013 IL 113688, ¶ 35. If the defendant makes a substantial showing of a constitutional violation at the second stage, the petition advances to the third stage where the trial court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2018); *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 30    In this matter, the trial court dismissed the defendant's petition at the second stage. We review *de novo* a trial court's dismissal of a postconviction petition at the second stage. *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 91. On *de novo* review, the reviewing court makes its own independent assessment of whether the allegations of the petition and supporting documentation, liberally construed in the favor of the petitioner and taken as true, are sufficient to invoke relief under the Act. *Sanders*, 2016 IL 118123, ¶ 31.

¶ 31    The right to counsel in postconviction proceedings is derived from statute rather than the Constitution. *People v. Owens*, 139 Ill. 2d 351, 364 (1990). Thus, postconviction petitioners have no constitutional right to counsel, effective or otherwise, and are guaranteed only the level of assistance which the statute provides. *People v. Custer*, 2019 IL 123339, ¶ 30. That level of assistance has been defined by our supreme court to mean a "reasonable" level of assistance, and a "reasonable" standard is significantly lower than the one mandated at trial by our state and federal constitutions. *Id.* One aspect of "reasonable" assistance is compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). See *People v. Suarez*, 224 Ill. 2d 37, 42 (2007).

11

¶ 32    Rule 651(c) imposes three duties on postconviction counsel. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Pursuant to the rule, postconviction counsel must show that he or she (1) consulted with the petitioner to ascertain his or her contentions of constitutional deprivation, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petition necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The purpose of the rule is to ensure that postconviction counsel shapes the defendant's claims into a proper legal form and presents them to the court. *People v. Perkins*, 229 Ill. 2d 34, 44 (2007). Proper presentation of a petitioner's substantive claims necessitates a "substantial showing" demonstrating a legally sufficient claim. *Id.*

¶ 33    On appeal, the defendant raises the sole issue of whether "appointed [postconviction] counsel failed to comply with Supreme Court Rule 651(c) and rendered unreasonable representation." The defendant argues that postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), by raising a claim not cognizable under the Act and a claim that was necessarily legally deficient. The defendant further argues that postconviction counsel failed to comply with Rule 651(c) and rendered unreasonable assistance of counsel by failing to raise an available potentially meritorious claim.

¶ 34    There is a major flaw in the defendant's argument that postconviction counsel failed to comply with Rule 651(c). The defendant's postconviction petition was prepared and filed by appointed counsel. Rule 651(c) applies only to defendants who file *pro se* petitions and does not apply when the original petition is filed by an attorney. *People v. Anguiano*, 2013 IL App (1st) 113458, ¶ 35; *People v. Mitchell*, 189 Ill. 2d 312, 358 (2000). Postconviction counsel cannot have violated the provision of Rule 651(c) requiring counsel to make any amendments to the filed *pro se* petition necessary to adequately present the petitioner's contentions where no *pro se* petition

12

exists. *Mitchell*, 189 Ill. 2d at 358. Therefore, the defendant's claim that postconviction counsel failed to comply with Rule 651(c) is meritless.

¶ 35 Reasonable assistance of counsel, however, extends to all defendants at the second stage of postconviction proceedings, regardless of whether they proceeded *pro se* or with counsel at the first stage. *People v. Cotto*, 2016 IL 119006, ¶ 42; *Anguiano*, 2013 IL App (1st) 113458, ¶ 32. Here, regardless of the defendant's reliance on Rule 651(c), there remains a claim of unreasonable assistance of postconviction counsel. As such, we must evaluate the reasonableness of postconviction counsel apart from Rule 651(c).

¶ 36 In *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 58, the court considered the proper standard for evaluating claims of unreasonable assistance of postconviction counsel when raised in an appeal from a second stage dismissal and asserted against an attorney who filed the initial postconviction petition. The *Zareski* court found that a "*Strickland*-like analysis" was the appropriate standard since it requires an evaluation of prejudice. *Id.* ¶ 59. The *Zareski* court noted that such standard "would prevent pointless remands to trial courts for repeated evaluation of claims that have no chance of success." *Id.* Thus, the *Zareski* court found that if a defendant's potential claim has no merit, the defendant cannot receive postconviction relief on that claim, no matter whether postconviction counsel should have presented the claim "earlier, better, or at all." *Id.* ¶ 61.

¶ 37 The *Zareski* court further determined that the "automatic-remand rule," set forth in *People v. Suarez*, 224 Ill. 2d 37, 47 (2007), which states that remand is required where the record does not demonstrate that postconviction counsel complied with Rule 651(c), regardless of the merits of the postconviction claims, is not applicable. *Zareski*, 2017 IL App (1st) 150836, ¶ 55. The *Zareski* court found that the holding in *Suarez* was based on postconviction counsel's violation of a

13

supreme court rule, and thus, does not apply where Rule 651(c) is not applicable. *Id.* The standard set forth in *Zareski* has been followed by this and other courts with regard to postconviction proceedings where Rule 651(c) does not apply. See *People v. Netter*, 2024 IL App (5th) 230112-U, ¶ 37; *People v. Perez*, 2023 IL App (4th) 220280, ¶ 54.

¶ 38 We further note that the prejudice requirement set forth in *Zareski* aligns with the requirement that new evidence of actual innocence be of conclusive character. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The conclusive character of the new evidence requires a showing that the fact finder would probably reach a different result after considering the prior evidence along with the new evidence. *Robinson*, 2020 IL 123849, ¶ 48. Thus, both prejudice and the conclusive character of the new evidence of actual innocence require a showing that, in the absence of the alleged deficiencies of counsel, there is a probability of a different outcome.

¶ 39 The defendant first argues that postconviction counsel rendered unreasonable assistance by presenting a claim that the DNA evidence rendered the blood evidence, presented at trial, unreliable. The defendant states that a challenge to the competency of the evidence is generally not constitutional in nature, and thus, not cognizable in postconviction proceedings unless the State's knowing use of the incompetent evidence violated the defendant's due process rights. Since postconviction counsel presented no evidence suggesting that the State knew that the blood evidence at trial may have been tainted, a claim that the new DNA evidence established that the defendant was convicted on incompetent evidence should have been raised in a petition for relief of judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West

14

2018)).[9] As such, the defendant argues that using a legally inadequate procedural vehicle for the defendant's claim constitutes unreasonable representation by postconviction counsel.

¶ 40    The defendant is correct that challenges to the sufficiency and competence of evidence are generally not cognizable in proceedings under the Act without an allegation of knowing use by the State. See *People v. Brown*, 169 Ill. 2d 94, 106 (1995). A claim of actual innocence based on newly discovered evidence showing a defendant to be actually innocent of the crimes for which he or she was convicted is, however, cognizable under the Act as a matter of due process. *People v. Washington*, 171 Ill. 2d 475, 489 (1996). Since the defendant's petition was based on the overall claim of the defendant's actual innocence allegedly supported by the new DNA evidence, the petition was not a legally inadequate procedural vehicle for the defendant's claim of unreliable blood evidence.

¶ 41    Next, the defendant argues that postconviction counsel asserted a meritless claim that the DNA evidence advanced the defendant's alibi defense by suggesting that an unknown individual was present at the scene. The defendant states that, contrary to this claim, mixed profiles were found that included minor profiles which were unsuitable for comparison, but that there were no profiles found from which the defendant and the victims could be affirmatively excluded. Therefore, the claim asserted by postconviction counsel that someone else was present at the time of the offenses was fatally flawed and based on speculation, since there is no evidence to support a claim that someone else was present at the time of offenses.

¶ 42    A meritless claim is one with no arguable basis in law or fact, and an attorney has an ethical obligation not to present a claim that is patently without merit. See *People v. Hodges*, 234 Ill. 2d

---

[9]Section 2-1401 petitions based on DNA testing under section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2018)) are not subject to the two-year statute of limitations placed on most section 2-1401 petitions (735 ILCS 5/2-1401(c) (West 2018)).

15

1, 16 (2009); *People v. Greer*, 212 Ill. 2d 192, 209 (2004). The defendant acknowledges that there is no evidence to support a claim that someone else was present at the time of offenses, and thus, we agree with the defendant that this claim had no merit.

¶ 43 The defendant also argues that postconviction counsel presented a claim that the defendant's blood standard was contaminated with another individual's DNA, but that it was not possible to determine whether such contamination occurred before or after the defendant's trial. As such, the defendant argues that the claim was speculative as to whether it affected the results presented at trial. The defendant argues that postconviction counsel should have, instead, presented a potentially viable claim that contamination occurred during the original testing since the blood standard of one of the victims was also contaminated, and there was no testimony at trial regarding how the blood standards were handled during testing and no testimony regarding how the testing was actually conducted.

¶ 44 Even if postconviction counsel had presented the defendant's claim in the manner argued above, and omitted the meritless claim, this matter would not have proceeded to a third stage evidentiary hearing. The trial court held that "even assuming that the defendant's blood sample and all of the blood evidence produced at trial was deemed completely unreliable, suppressed and not admitted during the defendant's jury trial, or, in the alternative, attempted to be used as evidence by the defense," the defendant failed to make a substantial showing of a constitutional violation through a showing of actual innocence given the other evidence connecting the defendant to the crimes of which he was convicted. We agree.

¶ 45 The evidence presented at trial is set forth in detail by our supreme court in *People v. Jones*, 123 Ill. 2d 387, 394-99 (1988), and we will not restate it here. We will note that a forensic scientist testified at trial that the blood evidence could only be typed and, based on typing, the blood found

16

at the scene was determined to be consistent with the defendant's and 12% of the human population of the same race. The forensic scientist further testified that the blood found on a number of items inside the victims' home, including a jewelry box, was consistent with the defendant's typing. The ISP crime laboratory's DNA testing result also indicated that the blood found on the jewelry box matched that of the defendant and does not contradict any of the blood evidence presented at trial. Although the DNA results indicated that the defendant's sample contained a mixture of human DNA profiles, the predominant human male profile, that of the defendant, was used for the comparison as the standard for the defendant. As such, the DNA evidence does not exculpate the defendant, nor does it make a showing that the fact finder would probably reach a different result after considering the prior evidence along with the new evidence.

¶ 46 Further, beyond the blood evidence, there was forensic evidence at trial regarding hair discovered in the backseat of the defendant's vehicle which had 13 characteristics in common with the hair standards of the victims. There was also evidence at trial that the defendant was in possession of property belonging to the victims shortly after the occurrence of the offenses, and evidence connecting the defendant to a prior break-in, in which a knife, later found at the victims' home and identified as the murder weapon, was taken. Other items from the prior break-in were also found in the defendant's vehicle.

¶ 47 As previously stated, to succeed on claim of unreasonable assistance of postconviction counsel when raised in an appeal from a second stage dismissal and asserted against an attorney who filed the initial postconviction petition, a defendant must show prejudice. *Perez*, 2023 IL App (4th) 220280, ¶ 54. Here, we do not find that there was a reasonable probability of a different outcome if postconviction counsel had not asserted one meritless claim or asserted a claim in the manner argued by the defendant since we agree with the trial court that, in the absence of any

17

blood evidence, the results of the trial would be the same given the additional evidence presented at trial. As such, we find that the defendant did not suffer any prejudice due to postconviction counsel's performance and, based on that finding, hold that postconviction counsel did not render unreasonable assistance of counsel.

¶ 48    We also find that there is not a probability that the jury would have reached a different result after considering the prior evidence along with the new evidence since the new evidence did not contradict the blood evidence presented at trial. Thus, we find that the defendant failed to make a substantial showing of a constitutional violation of actual innocence sufficient to advance to the third stage of postconviction proceedings. Accordingly, we affirm the trial court's judgment dismissing the defendant's successive postconviction.

¶ 49                                    III. CONCLUSION

¶ 50    For the foregoing reasons, we affirm the judgment of the trial court of Jefferson County.

¶ 51    Affirmed.

18