NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250665-U

NO. 4-25-0665

IN THE APPELLATE COURT

FILED
May 12, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| AMARI McNABB, | ) | No. 19CF606 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly dismissed defendant's amended postconviction petition at the second stage of proceedings because defendant did not make a substantial showing of a constitutional violation.

¶ 2    In 2021, a jury found defendant, Amari McNabb, guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2018)) and mob action (720 ILCS 5/25-1(a)(1) (West 2018)) in connection with the shooting death of Juan Nash at a street party in Bloomington, Illinois. However, the jury found the State failed to prove that defendant personally discharged a firearm, suggesting that he was convicted under an accountability theory. The trial court sentenced defendant to a total of 28 years in prison, and we affirmed the judgment on direct appeal. See *People v. McNabb*, 2022 IL App (4th) 220070-U, ¶ 2. Defendant now appeals an order granting the State's motion to dismiss his amended postconviction petition. We affirm.

¶ 3                          I. BACKGROUND

¶ 4        Scott Allen, Exodus Herbert, and defendant each faced charges arising out of Nash's death. Allen's case proceeded to a jury trial in June 2020, at which Allen *did not* present a claim of self-defense. Allen's jury found him guilty of all charges, including first degree murder, and found that he personally discharged a firearm. In February 2021, Herbert pleaded guilty to one count of first degree murder.

¶ 5                          A. Defendant's Jury Trial and Sentence

¶ 6        Before defendant's July 2021 jury trial, his counsel disclosed to the State an intent to "argue no duty to retreat, self-defense, defense of others and the second amendment [(U.S. Const., amend. II)]." Because defendant never admitted to shooting Nash personally, the self-defense claim was derivative—*i.e.*, Allen was legally justified in shooting Nash, so defendant could not be held accountable for Nash's death.

¶ 7        During *voir dire*, one of defendant's attorneys questioned prospective jurors about whether they accepted the principles attendant to the law of self-defense. During the defense's opening statement, counsel mentioned that (1) there was "no evidence of a plan" to kill Nash; (2) Nash was intoxicated, aggravated, and armed with a gun on the night of the shooting; (3) there was "a quick draw" of guns between Nash and Allen that resulted in both of them being shot; (4) no witness would testify that defendant shot a gun; and (5) the State would rely on gang evidence because there was no evidence "directly implicating" defendant. On the topic of self-defense, the attorney conducting defendant's opening statement said: "Now there is self-defense with Scotty Allen. He can also defend other people that he's with[,] which is [defendant]. Okay? That's within the law. We're totally okay about it. It's within Illinois. It's who we are."

¶ 8        Our decision in defendant's direct appeal included a summary of the proceedings resulting in defendant's convictions, including a lengthy recitation of the trial evidence. *McNabb*,

2022 IL App (4th) 220070-U, ¶¶ 11-94. We need not repeat that discussion here. It will suffice to say the following.

¶ 9        The evidence showed that 20 shots were fired from three different guns at a crowded street party on the evening of April 2, 2019. It was determined that Nash fired 14 of those shots, some of which hit Allen in the lower back. Nash was shot with two different caliber bullets, including a shot through the heart that did not immobilize him immediately but eventually proved fatal.

¶ 10       Defendant, Allen, Herbert, and Justin Walls were in each other's company throughout the night of the shooting. The evidence showed that Allen was one of the people who shot Nash during the exchange of gunfire. However, no witness saw defendant, Herbert, or Walls fire a gun. Three State witnesses who were present when the shooting occurred tended to undermine the theory that Allen acted in self-defense. Specifically, although Daronte Thomas generally professed a lack of recollection of events on the witness stand, the State impeached him with prior inconsistent statements he made to the police to the effect that he saw muzzle flashes from the first shots fired going toward Nash rather than coming from him. Shawndell Wright testified that although he did not see who first drew or fired a gun, after hearing a couple gunshots, he looked up and saw Nash fall, stand up, and shoot about 14 times. Michael Holton expressly testified that he saw Allen fire the first shot. No witness testified that Nash either drew a gun or shot first. Nevertheless, at defendant's request and over the State's objection, the trial court instructed the jury on the principles of self-defense.

¶ 11       The prosecutor argued in closing arguments that the circumstantial evidence proved that defendant and his friends formed a plan to shoot Nash at the street party. According to the State's theory, defendant was one of the people who personally shot Nash and was also accountable

for Allen's actions.

¶ 12        One of the primary themes in defendant's closing argument was that the State's theory that Nash died as a result of a planned execution was an unreasonable inference from the evidence. Rather, the attorney who presented defendant's closing argument suggested the exchange of gunfire occurred spontaneously, after an argument escalated and became heated. Counsel insinuated that Allen and Walls may have been the two people who shot Nash. To that end, counsel mentioned that no witness saw defendant with a gun, whereas Allen and Walls were both seen toting fanny packs that night, which the State had theorized contained guns. Counsel also incorporated self-defense principles into this overarching reasonable-doubt argument. For example, counsel asserted: "Do you have anybody that knows anything about who was drawing their weapon first? Perhaps [Nash] drew first. Perhaps he was trying to. Perhaps Scotty Allen responded quicker, got the shot off. [Nash], got 14 shots off. 14 shots." Counsel later added: "Nobody knows who drew first. It could be self-defense. Arguably it could not be, but they don't know. It could be a lot of things. That's what reasonable doubt is." However, at the end of his closing argument, counsel referenced his cocounsel's questioning of prospective jurors during *voir dire* and more directly asserted that Allen fired a gun in self-defense:

> "As far as, like, the actual shooting itself, you did hear evidence about Juan Nash, and he had his hands in his pants at the time of this argument that built up to the point of gunfire. So you have to really factor in whether or not this was a justified shooting. And the question came out not too well. Does anybody here have a problem with the concept of someone killing somebody else? What we meant was, justifiably in self-defense. That's what we meant by the question. We did not mean that killing's great and it should be accepted as a natural part of life. But if one is

- 4 -

justified, that's what we're asking. If you're defending yourself or defending someone else, which that's what our position is, Scotty Allen was justified in his response to [Nash]. He's defending himself, he's defending [defendant] as well."

¶ 13 During deliberations, the jury submitted a note questioning the fairness of the law regarding accountability. With the agreement of the parties, the trial court responded that the jury should refer to the instructions it had already received. The jury found defendant guilty of first degree murder and mob action but not guilty of aggravated discharge of a firearm. The jury also found the State failed to prove that defendant personally discharged a firearm, which would have subjected him to a sentencing enhancement.

¶ 14 The trial court sentenced defendant to a total of 28 years in prison.

¶ 15                                    B. Direct Appeal

¶ 16 On direct appeal, defendant raised multiple evidentiary issues, argued the trial court should have added certain language to an accountability instruction, challenged the racial composition of the jury and venire, and maintained the evidence was insufficient to support his murder conviction. We affirmed. *McNabb*, 2022 IL App (4th) 220070-U, ¶ 2.

¶ 17                            C. Postconviction Proceedings

¶ 18 On February 23, 2024, defendant filed a postconviction petition, represented by the same attorney who handled his direct appeal. He claimed his "[t]rial counsel was ineffective for failing to raise a self-defense under the theory of accountability." According to the petition, the trial evidence and a recent affidavit that Allen submitted in connection with his own postconviction petition "strongly" supported a claim that Allen shot Nash in self-defense. Although some statements in defendant's petition seemed to criticize his trial attorneys for failing to present evidence in support of a self-defense claim, the petition did not expressly articulate a claim of

ineffective assistance for failing to call any witness. Nor did defendant frame the information in Allen's affidavit as newly discovered evidence that supported a claim of actual innocence. Curiously, in his petition, defendant did not mention that (1) his trial attorneys referenced self-defense in both their opening statement and closing argument or (2) the trial court instructed the jury on self-defense over the State's objection.

¶ 19     One of the supporting documents attached to defendant's initial postconviction petition was Allen's October 2, 2023, postconviction petition in his own case, in which he argued, among other things, that his trial counsel was ineffective for failing to raise self-defense. Defendant also attached a September 7, 2023, affidavit that Allen had filed in his own case. In summary, in that affidavit, Allen averred that Nash summoned him to the street party, got aggressive with him, and shot him in the back, which then prompted Allen and Walls to return fire. The final attachment to defendant's petition worth mentioning was his own March 18, 2024, affidavit, in which he corroborated Allen's claim that Nash summoned Allen to the party. Defendant further asserted that Nash appeared intoxicated and was hostile toward Allen at the party. Defendant claimed that he heard gunshots, saw that Allen was shot, and then ran away from the scene. Defendant denied being aware of any planned altercation or shooting.

¶ 20     The trial court advanced defendant's postconviction petition to the second stage of proceedings. Defendant's postconviction counsel moved to withdraw when she relocated, and new counsel filed an appearance for defendant.

¶ 21     The State moved to dismiss defendant's petition. The State argued the petition was untimely because it was filed one day late and defendant did not allege that he lacked culpable negligence for the delay. The State also maintained that defendant's ineffective-assistance claim was forfeited because he could have raised it on direct appeal. Finally, the State proposed that

defendant's ineffective-assistance claim lacked merit, as his trial attorneys indeed argued that Allen acted in self-defense and the jury was instructed on self-defense.

¶ 22    Defendant's successor postconviction counsel filed what she labeled as an amended petition and response to the State's motion to dismiss. Counsel adopted defendant's original petition and amended it in two respects. Specifically, the amended petition alleged that defendant was not culpably negligent for filing the original petition late, as his previous appellate/postconviction counsel filed the petition within what she believed was the deadline. The amended petition also alleged that this same attorney was ineffective for failing to argue on direct appeal that defendant's "trial counsel was ineffective for failing to raise self-defense under the theory of accountability." On this point, the amended petition expressly acknowledged that defendant's ineffective-assistance claim could have been, but was not, raised on direct appeal. In response to the State's motion to dismiss, the amended petition then amplified defendant's argument about why his trial attorneys were ineffective. In short, the amended petition alleged that defendant's trial attorneys did not cogently explain to the jury in either the opening statement or closing argument exactly why Allen acted in self-defense and how that negated the State's accountability theory against defendant. The amended petition also alleged, without further elaboration, that defendant's trial attorneys "failed to develop the facts that could have led the jury to the theory of self-defense," such as by cross-examining witnesses on that issue. According to the amended petition, if defendant's trial attorneys had "presented a competent self-defense theory," in light of the note the jury sent during deliberations mentioned above, "the jury would have returned an alternative verdict."

¶ 23    Along with the amended petition, defendant submitted an affidavit from his appellate counsel/initial postconviction counsel. In that affidavit, counsel asserted that she, not

defendant, was to blame for failing to raise ineffective assistance of trial counsel on direct appeal and then filing the postconviction petition one day late. Defendant also submitted a supplemental affidavit from Allen, dated March 21, 2025, in which he attested as follows:

"(1) The declarations contained within my *pro se* affidavit, subscribed and sworn to on September 7, 2023, remain true and accurate.

(2) I submit this supplemental affidavit to clarify my previous affirmations.

(3) On April 2, 2019, I did have a gun on my person. I had it inside my sweatpants pocket.

(4) I never showed my gun to [defendant].

(5) I never talked about having a gun with [defendant].

(6) I never discussed going to 'the party' to fight or confront or shoot anyone with [defendant].

(7) In fact, it was never my intention, nor anyone else's for that matter, to return to the party to get into a fight. Juan Nash had asked me, personally, to return to the party to 'have words', and so I did.

(8) [Defendant] never had a gun.

(9) [Defendant] had no knowledge about a plan to bring guns or use them in any way.

(10) There was no plan to bring guns to the party or use them in any way.

(11) At my trial, I intended to raise the self-defense defense, which could have included my testimony, however, two days before trial, my trial counsel went against my wishes.

(12) I have reviewed this statement, and I swear and affirm that this would

be my testimony if I had been called to testify at [defendant's] trial."

¶ 24    On April 18, 2025, the trial court held a hearing on the State's motion to dismiss. In addition to reiterating the points raised in the postconviction petition and amended petition, defendant's successor postconviction counsel contended that, once Allen was tried and sentenced, defendant's trial attorneys should have spoken with Allen to see if he would testify on defendant's behalf in support of a self-defense claim. Counsel asserted that there was "absolutely no indication whatsoever" that defendant's trial attorneys attempted to speak with Allen after his trial. According to counsel, if defendant's trial attorneys had obtained information from Allen consistent with his affidavit and presented him as a witness, it "would most certainly probably change the outcome of the verdict that was rendered by the jury." Defendant's counsel further suggested that because defendant's trial attorneys "completely failed to do the investigation that was necessary" before deciding what defense would be appropriate to pursue, a third-stage postconviction hearing was warranted to explore those issues.

¶ 25    In response to this new argument, the State argued that it was "pure speculation" that Allen would have been available to testify at defendant's trial, given that Allen was "fighting at the time for a new trial" in his own case. The trial court took the matter under advisement.

¶ 26    On June 9, 2025, the trial court entered an order granting the State's motion to dismiss defendant's amended postconviction petition. The court rejected the State's challenge to the timeliness of defendant's petition, as defendant alleged his lack of culpable negligence. However, the court determined that defendant's claim of ineffective assistance of trial counsel was waived, as "[t]he issue of self-defense was readily available to be raised on direct appeal." The court then determined that defendant's appellate counsel was not ineffective for failing to argue ineffective assistance of trial counsel on direct appeal. On that point, the court reasoned that

defendant's trial attorneys pursued a reasonable strategy in light of the trial evidence by focusing on the State's inability to prove its case and then asserting self-defense as an alternative theory. The court further found that defendant failed to prove prejudice in connection with an ineffective-assistance claim, given that defendant's jury considered and rejected the issue of self-defense.

¶ 27       Defendant filed a timely notice of appeal, which this court later allowed him to amend.

¶ 28                                    II. ANALYSIS

¶ 29       On appeal, defendant asks us to reverse the second-stage dismissal of his amended postconviction petition and "remand for a third-stage evidentiary hearing on whether his trial counsel's conduct constituted reasonable trial strategy." Defendant reasons that his trial attorneys' primary theory—that the State failed to prove defendant was one of the shooters—did not provide a defense to the State's accountability theory. According to defendant, the best strategy in light of the trial evidence would have been for his attorneys to articulate a cogent argument that Allen acted in self-defense, which meant that defendant was not guilty under accountability principles. Defendant asserts that the order dismissing his amended petition was premature, as an evidentiary hearing is necessary to explore the nature of his off-the-record conversations with his attorneys regarding strategy.

¶ 30       Alternatively, if we determine defendant's ineffective-assistance claim is "procedurally barred" because it was not sufficiently alleged below, defendant asks us to "reverse and remand for additional second-stage proceedings, including further amendments" to the petition. However, as part of his argument in support of this alternative request, defendant does not allege that he received unreasonable assistance of postconviction counsel, nor does he identify

any further amendments that would be appropriate. To the contrary, defendant expressly asserts that the amended petition alleged his claim sufficiently.

¶ 31 The State responds that the trial court properly dismissed defendant's amended postconviction petition. The State argues, among other things, that (1) defendant's claim of ineffective assistance of trial counsel is forfeited, as he could have raised that issue on direct appeal; (2) defendant has not identified any off-the-record discussions with his trial attorneys that would be relevant to an ineffective-assistance claim; (3) defendant's trial attorneys performed reasonably by presenting a self-defense claim and convincing the jury that defendant was not one of the shooters, sparing him a firearm sentencing enhancement; and (4) defendant's ineffective-assistance-of-appellate-counsel claim fails because the issue defendant says should have been raised on direct appeal lacks merit.

¶ 32 Furthermore, the State maintains that defendant failed to present a "clearly defined legal argument" in support of his alternative request for additional second-stage proceedings, so he forfeited that claim. Nevertheless, the State asserts that defendant received reasonable assistance of postconviction counsel and that his successor counsel amended the petition appropriately.

¶ 33 In his reply brief, defendant clarifies that he raised his alternative argument about the need for further second-stage proceedings not knowing whether the State was going to argue on appeal that additional amendments to the petition were necessary. Defendant reiterates that he "does not argue that any further amendments were necessary," and he "accepts the State's concession" that defendant's successor postconviction counsel amended the initial petition properly. Thus, defendant asserts that we should remand the case for further postconviction proceedings only if we hold that "the petition was not sufficiently amended or supported."

¶ 34                          A. The Applicable Legal Principles

¶ 35            The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2024))

"provides a means for individuals serving criminal sentences to assert that their convictions

resulted from substantial denials of their constitutional rights." *People v. Hilliard*, 2023 IL 128186,

¶ 18. There are three stages of postconviction proceedings. At the first stage, the court reviews the

petition independently to determine whether it is " 'frivolous or is patently without merit.' "

*Hilliard*, 2023 IL 128186, ¶ 19 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2018)). If the court does

not summarily dismiss the petition pursuant to this standard, the matter proceeds to the second

stage. *Hilliard*, 2023 IL 128186, ¶ 19. At that point, the State may answer the petition or move to

dismiss it. *People v. Domagala*, 2013 IL 113688, ¶ 33. If the defendant's petition and

accompanying documentation make a substantial showing of a constitutional violation, the matter

proceeds to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶¶ 33-34. At that

evidentiary hearing, the trial court "serves as the fact finder" by assessing witness credibility,

weighing testimony, resolving evidentiary conflicts, and ultimately determining whether the

defendant is entitled to postconviction relief. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 36            Here, the trial court dismissed defendant's amended postconviction petition at the

second stage of proceedings. The sole focus at the second stage is "the legal sufficiency of the

petition." *Domagala*, 2013 IL 113688, ¶ 35. Accordingly, in evaluating whether a defendant made

a substantial showing of a constitutional violation at the second stage, the trial court may not make

factual findings or determine credibility. *Domagala*, 2013 IL 113688, ¶ 35. Rather, the court must

accept as true all well-pleaded facts in the petition that are not "affirmatively refuted by the

record." *Domagala*, 2013 IL 113688, ¶ 35. The question is whether the defendant's well-pleaded

allegations, if proven at an evidentiary hearing, would justify granting postconviction relief.

*Domagala*, 2013 IL 113688, ¶ 35. We review *de novo* an order dismissing a petition at the second stage. *People v. Huff*, 2024 IL 128492, ¶ 13.

¶ 37 Defendant claims that both his trial and appellate counsel provided ineffective assistance. To obtain relief based on ineffective assistance of counsel, a defendant must show both that counsel performed deficiently and that such deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the deficiency requirement, the United States Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that the challenged action was sound strategy. *Strickland*, 466 U.S. at 689. As for *Strickland*'s second requirement, prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 38 B. Defendant's Claim that His Trial Attorneys Were Ineffective
in the Way They Presented a Defense Based on the Trial Evidence

¶ 39 Defendant claimed in his postconviction petition that his trial attorneys were ineffective for failing to present a self-defense theory. To the extent defendant criticized how his attorneys articulated a defense to the jury based on the evidence presented at trial, defendant could have raised this issue on direct appeal. See *People v. Veach*, 2017 IL 120649, ¶ 47 (explaining that

ineffective-assistance claims presented in collateral proceedings, such as postconviction petitions, are "deemed procedurally defaulted" if they could have been raised on direct appeal). Thus, as defendant's successor postconviction counsel recognized, defendant's only recourse to circumvent procedural default was to allege that his appellate counsel was ineffective for failing to raise this issue on direct appeal. See *People v. Addison*, 2023 IL 127119, ¶ 23 ("When a petitioner is asserting claims that could have been raised on direct appeal, he can avoid the procedural bar of forfeiture by casting his claims as ineffective assistance of appellate counsel for failing to raise the issues on direct appeal."). Accordingly, we will consider whether defendant made a substantial showing that his appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel on direct appeal.

¶ 40          C. Defendant's Claim of Ineffective Assistance of Appellate Counsel

¶ 41          The *Strickland* test governs claims of ineffective assistance of appellate counsel raised in a postconviction petition. *People v. Makiel*, 358 Ill. App. 3d 102, 105 (2005). Evaluating a claim of ineffective assistance of appellate counsel requires the reviewing court to consider the merits of the issue the defendant claims should have been raised on direct appeal. See *People v. Guest*, 166 Ill. 2d 381, 390 (1995) ("To determine if appellate counsel could reasonably have decided not to allege trial counsel's ineffectiveness, we will focus on trial counsel's performance."); *Makiel*, 358 Ill. App. 3d at 113 ("Unless the underlying issue has merit, a defendant cannot be considered to have suffered prejudice from appellate counsel's failure to brief that issue."). Because the present case involves second-stage postconviction proceedings, the question for our consideration is "whether the petition alleges a substantial constitutional deprivation unrebutted by the record which requires an evidentiary hearing." *Makiel*, 358 Ill. App. 3d at 114.

¶ 42       As an initial matter, to the extent defendant's postconviction claim is premised on an argument that his trial attorneys failed to present a theory of self-defense to the jury *at all*, the record affirmatively refutes that claim. The record shows that defendant's attorneys advocated for instructing the jury on the principles of self-defense, which the trial court allowed over the State's objection. Defendant's attorneys also mentioned self-defense during *voir dire*, their opening statement, and their closing argument. Thus, the issue of self-defense was indeed raised at trial, so defendant's appellate counsel could not have presented a meritorious argument on direct appeal that the trial attorneys failed to assert self-defense.

¶ 43       The other aspect of defendant's postconviction claim is essentially that his trial attorneys should have advanced a self-defense theory more forcefully or cogently. In his appellant's brief, defendant reasons that self-defense was the "best" argument available to him. He criticizes his trial attorneys for focusing on the State's failure to prove that he personally shot Nash, as that was a "legally incomplete defense" that did not respond to the State's accountability theory. However, in presenting these arguments, defendant overlooks that his trial attorneys also emphasized that there was no plan to shoot Nash, as the shooting was spontaneous and arose out of an argument that escalated. If accepted by the jury, the theory that the shooting was not planned and defendant was not one of the shooters would have rendered defendant not guilty under principles of accountability. Thus, the record affirmatively refutes defendant's contention that his trial attorneys advanced a legally incomplete defense.

¶ 44       Moreover, defendant's contention that his trial attorneys should have pursued a better strategy is not the type of argument that supports an ineffective-assistance claim. "[T]he choice of defense theory is ordinarily a matter of trial strategy, and counsel has the ultimate authority to decide this trial strategy." *Guest*, 166 Ill. 2d at 394. Accordingly, courts "will generally

not review a claim of ineffectiveness of counsel based on inadequate trial strategy" unless "counsel entirely fails to conduct any meaningful adversarial testing." *Guest*, 166 Ill. 2d at 394.

¶ 45   Plainly, this is not a case where defendant's attorneys failed to conduct any meaningful adversarial testing. To the contrary, the record leaves no doubt that defendant's attorneys pursued a reasonable strategy in light of the trial evidence. One of the State's theories at trial was that defendant personally shot Nash. However, no witness saw defendant in possession of a gun at the street party. Accordingly, it was entirely appropriate for defendant's attorneys to highlight the State's failure to prove that defendant personally discharged a firearm. The defense was indeed successful in presenting this argument, which spared defendant decades of additional prison time for a firearm sentencing enhancement.

¶ 46   Defendant's attorneys also reasonably prioritized an argument that the State failed to prove there was any plan to shoot Nash, a theory that directly countered the State's allegation that defendant was legally responsible for the actions of the other people who shot Nash. Notably, no witness testified about a plan to shoot Nash, and the State's argument at trial as to why defendant was accountable for the shooters' actions rested on a series of inferences drawn from circumstantial evidence. As we explained in defendant's direct appeal, the State's evidence of defendant's guilt under an accountability theory was sufficient but "not overwhelming." *McNabb*, 2022 IL App (4th) 220070-U, ¶ 159. In light of the trial evidence, it was reasonable for defendant's attorneys to counter the State's accountability theory by arguing that defendant was neither one of the shooters nor involved with any plan to shoot Nash.

¶ 47   From the opening statement and closing argument, it seems that defendant's trial attorneys invoked self-defense as an alternative theory that was weaved into a broader reasonable-doubt argument. Defendant now criticizes how his attorneys argued that issue. However, in light

of the trial evidence, defendant's attorneys did not have a more compelling argument about self-defense available to them. No witness testified that Nash drew or fired a gun before Allen did. By contrast, one witness expressly testified that Allen fired the first shot, and the testimony of two other witnesses strongly implied that Nash did not fire first. Simply put, the evidence was insufficient for counsel to lean heavily into a self-defense theory.

¶ 48    Moreover, defendant did not suffer any prejudice from his attorneys' actions. The jury was instructed on self-defense principles but nevertheless found defendant guilty under an accountability theory. In light of the weak evidence supporting a self-defense claim, it is clear that the result of trial would not have been different had defendant's attorneys approached the issue of self-defense differently in their opening statement and closing argument. The trial court expressly instructed the jury that opening statements and closing arguments are not evidence.

¶ 49    Because the underlying issue lacks merit, defendant has failed to make a substantial showing that his appellate counsel was ineffective for failing to assert his trial attorneys' ineffectiveness on direct appeal.

¶ 50    D. The New Evidentiary Materials Submitted During

These Postconviction Proceedings

¶ 51    Beyond the record that was available to defendant's appellate counsel, we have also considered the new evidentiary materials that defendant submitted in support of his postconviction petition, including his own affidavit and two affidavits from Allen. These materials do not change our holding that defendant failed to make a substantial showing of a constitutional violation that would justify a third-stage evidentiary hearing.

¶ 52    Defendant's own affidavit did not support a self-defense claim, as he denied seeing the shooting ("I saw Allen was shot but didn't see much else."). That information was cumulative

of what the jury already heard at defendant's trial through defendant's recorded police interrogation. Moreover, defendant never claimed that his trial attorneys were ineffective for failing to call him to testify in his own defense, so his affidavit had little relevance to the postconviction claim.

¶ 53        Allen's affidavits contained certain facts that were not presented at defendant's trial. For example, defendant's jury never heard testimony that Nash summoned Allen to the party and then shot him, which caused Allen and Walls to return fire. Defendant's successor postconviction counsel mentioned at the hearing on the State's motion to dismiss that defendant's trial attorneys should have investigated whether Allen would have been willing to testify at defendant's trial in support of a derivative self-defense claim. However, we note that defendant presented no evidence suggesting that his attorneys *did not* investigate this issue. Absent some indication to the contrary, we must presume that defendants' attorneys performed their duties sufficiently, not deficiently. See *Strickland*, 466 U.S. at 689 (explaining that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Additionally, defendant did not expressly plead an ineffective-assistance claim of this nature that was distinct from his overarching critique of how his trial attorneys presented their arguments based on the existing trial evidence. Moreover, in this appeal, defendant does not argue that his petition made a substantial showing of a constitutional violation based on a claim that his trial attorneys were ineffective for failing to investigate Allen as a potential witness. Accordingly, any claim that could have been raised is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 54        For these reasons, the new evidentiary materials that defendant submitted in

connection with these postconviction proceedings do not make a substantial showing of a constitutional violation that would justify a third-stage evidentiary hearing.

¶ 55        E. Defendant's Argument That a Third-Stage Evidentiary Hearing Is

Required Because His Postconviction Claim Depends on

Discussions Occurring Off the Record

¶ 56        On appeal, defendant asserts that a third-stage evidentiary hearing is warranted on his postconviction claim so that both he and his trial counsel can "testify concerning the relevant off-the-record strategy discussions referenced in [defendant's] affidavit." Confusingly, however, defendant then cites pages in the record containing *Allen's* supplemental affidavit, in which Allen accused his own counsel of going against his wishes by failing to assert self-defense. In two other places in his appellant's brief, defendant likewise seemingly misattributes Allen's supplemental affidavit to himself.

¶ 57        Defendant's arguments are unpersuasive. Resolving defendant's postconviction claim does not depend on any off-the-record conversations or credibility determinations that would require a third-stage hearing. Rather, as explained above, the record shows that defendants' attorneys were reasonable in how they argued the issue of self-defense in light of the trial evidence.

¶ 58        F. Request to Remand the Case for Further Second-Stage Proceedings

¶ 59        Finally, we hold that there is no need to remand the case for further second-stage proceedings, which is the alternative relief defendant requests. Because defendant filed his initial postconviction petition through counsel rather than *pro se*, the certification requirement of Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) has no application here. See *People v. Perez*, 2023 IL App (4th) 220280, ¶ 39. Although defendant was entitled to reasonable assistance of retained postconviction counsel (*Perez*, 2023 IL App (4th) 220280, ¶ 39), defendant has neither alleged

that he received unreasonable assistance of postconviction counsel nor advised us what further amendments to his petition would be necessary.

¶ 60 Moreover, the record shows that defendant's successor postconviction counsel appropriately amended the original petition to allege (1) defendant's lack of culpable negligence in response to the State's argument that the petition was untimely and (2) ineffective assistance of appellate counsel to address the fact that defendant's underlying claim of ineffective assistance of trial counsel was procedurally defaulted. Thus, defendant's amended postconviction petition adequately presented his claim, even though he ultimately could not make a substantial showing of a constitutional violation to justify a third-stage hearing. There is no basis to remand for further second-stage proceedings.

¶ 61                                    III. CONCLUSION

¶ 62 For the reasons stated, we affirm the trial court's judgment.

¶ 63 Affirmed.